CHRIST TREICHEL v. GREAT NORTHERN RAILWAY COMPANY.[1]

May 31, 1900.

Nos. 12,151—(101).

**Railway—Obstructing Water Course.**

> In an action to recover damages for injury to crops alleged to have been caused by obstructing the natural capacity of a water course, evidence examined, and *held*, that the evidence does not support the verdict.

Action in the district court for Norman county to recover $5,000 damages for injuries to crops caused by defendant's negligent maintenance of its railroad without sufficient culverts and by construction of the same so as to obstruct a natural water course, whereby water overflowed plaintiff's land. The case was tried before Watts, J., and a jury, which rendered a verdict in favor of plaintiff for $532.40. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*C. Wellington,* for appellant.

*H. Steenerson,* for respondent.

LEWIS, J.[2]

Plaintiff was the owner of the southeast ¼ of section 32, township 146, range 46, in the Red River valley. Defendant's railway line crosses the southwest corner of this land, and runs in a northwesterly and southeasterly direction. The plaintiff's land and the country surrounding are comparatively level, falling gently to the northwest. There is a natural coulee, called "Spring Creek," which enters plaintiff's land near the southeast corner of the southeast ¼, and runs in a northwesterly direction, crossing plaintiff's west line a

---

[1] Reported in 82 N. W. 1110.            [2] BROWN, J., absent, took no part.

short distance south of the northwest corner, and passing under the railroad a short distance west thereof. This coulee is well defined, some thirty feet in width at the top of its banks, and from three to four feet deep in the center. At the point where the coulee passes under the railroad is a bridge of the ordinary character in that country, provided with a water way. At a point on its railroad line five hundred feet south from the above-mentioned railroad bridge, defendant had formerly constructed and maintained a culvert ten by one feet in dimensions, but had for some reasons of its own filled it up in 1894. The place where this culvert was located was level; there being no water way or natural depression at that point, and no connection with the creek. The railroad bridge was built in 1872, at the time the road was constructed, and had been maintained in the same condition and size up to the time of the injury complained of. Defendant's road is graded up about one and one-half feet above the natural lay of the land through which it passes.

The complaint alleges that by the filling up of the old culvert in 1894, and by reason of constructing the culvert or opening in the railroad bridge over the coulee negligently, and of insufficient capacity, the natural flow of water through the same was obstructed, and caused to flow back upon plaintiff's premises, thus damaging his crops, in 1896 and 1897. The defense was that plaintiff's land and the surrounding country are practically level, with no well-defined drainage ways or depressions that serve to carry off the surface water, other than the certain creek mentioned; that defendant had always maintained a bridge with a water way sufficient to carry off all water flowing in the creek, except that which might come through unusual and extraordinary floods, and that the rains which accomplished the damages alleged were unusual and flooded the whole country; and that whatever damage plaintiff suffered was from no negligence of defendant, but was occasioned by the act of God. Plaintiff had a verdict in the court below, and defendant appeals to this court from an order denying its motion for judgment notwithstanding the verdict, and from an order denying its motion for a new trial, and assigns as error that the verdict was not justified by the evidence.

80 M.—7

Admitting that the law of the subject is somewhat unsettled, we shall not attempt any review of the numerous water-course and drainage decisions by this court. Respondent appears to have tried the case somewhat upon the theory that the defendant was required to maintain under its roadbed culverts sufficient to carry off the surface water, without reference to natural depressions or water ways. There is no evidence as to the number and capacity of other culverts north and south of plaintiff's land, and this issue was not presented in the pleadings, and plaintiff must be held strictly to the allegations in his complaint. Neither shall we attempt to define what is meant by the expression "act of God," as applied to the evidence. Whether the defendant should have anticipated unusual and heavy rains from time to time, and have prepared a proper culvert under this bridge, and other culverts in the vicinity, to carry off the surface water on such occasions, are questions not requiring solution here. The plaintiff has assumed the burden of proving that the damage he complains of was occasioned by two acts on part of defendant—First, by filling up the old culvert; and, second, by constructing the bridge with less capacity than the capacity of the stream. Does the evidence reasonably tend to sustain this claim?

Taking the most favorable view of the evidence for plaintiff, it appears: That the whole country around plaintiff's locality is nearly level; falling to the northwest at the rate of about one foot to the half mile across plaintiff's land. That in the spring of 1896 and in July, 1897, there were heavy rains, covering nearly the whole of plaintiff's land with water, and standing up to the railroad ties on the east side of the track. At different points along the track from plaintiff's land, north, the water ran over the railroad. The farmer adjoining plaintiff on the west had no crop except on high points. The high water was not confined to the locality under consideration, but similar conditions existed for miles around. The only evidence tending to sustain plaintiff's claim is the testimony of plaintiff and his witnesses, to this effect: Plaintiff:

"Q. What happened to it [the wheat] after you had put it in? A. Water comes over, and it never comes up. Q. How did the water come? A. It came in that creek. Q. What was the reason it

came back on your land? A. It never can get through. Q. Where? A. Through the railroad. Q. How much water came over your field that year? How deep was the water? A. It was deepest next to the railroad. * * * On the north side it wasn't very much. * * * On the east side the water comes even with the ties. * * * Q. How deep did it cover your field? A. About a foot and a half. Q. How was the land on the other side? Was there any water there? A. Not the first three days. Q. The water flowed over on the other side, too, after a while? A. Yes, sir. Q. All the water was on the east side? A. Yes, sir. Q. Then after three days it goes over on the other side? A. Yes, sir. Q. What was the reason of that? A. It never could get through the railroad."

The above testimony refers to the spring of 1896. In reference to the rain in July, 1897, the plaintiff testified as follows:

"Tell the jury about that. A. The heads were all out, and the water overflowed it, and I got no wheat at all. * * * The water could never get through that railroad. * * * Q. How was it on the west side of the railroad that year? A. There was no water there the three first days. Then the water soaks over there. It went over the railroad. Q. There wasn't any water there for three days, but after that it came over? A. Yes, sir. Q. Did it go away there? A. Yes. * * * Q. How was it on your land? Did it stand there? A. Yes, sir. It did stand there. * * * Q. How long did the water stand on that land there? A. About fourteen days."

On cross-examination plaintiff testified as follows:

"Q. The water comes up as high as the ties on the railroad? A. I guess. Q. Now, as a matter of fact, didn't the water go all over on the west side just the same, and drown out those crops? A. Some; yes; not all. Q. Didn't it drown out Julius Baartz's crop? A. Yes, sir. Q. He lives on the west side, doesn't he? A. Yes, sir. * * * Q. About what time did these heavy rains come in 1896? A. In May. * * * Q. The storm was so heavy that water stood all around in that country? A. Yes, sir. * * * Q. As a matter of fact, didn't the water stand on the west side of the railroad just the same as on the east side? A. Not the first three days. Q. Afterwards did it? A. Yes, sir. * * * Q. Then it all went over on the west side of the railroad? Is that true? A. I don't know. Q. When did you ever before see the water so high in that country? * * * A. Sixteen or seventeen years ago."

In reference to rains in 1897:

"Q. Wasn't the water so deep all through that country, clear north of you, clear up to Lockhart, it flowed right over the rails of the track? A. Yes, sir. Q. That whole country was a lake, wasn't it,—all covered with water, wasn't it? A. Yes, sir. Q. Julius Baartz's was covered with water just about as bad, on the west side? A. Yes, sir."

The testimony of two other witnesses for plaintiff was about the same,—that the water stood up to the railroad ties on the east side, and could not get through. Plaintiff produced an engineer who testified as an expert, and prepared a plat (Exhibit B) showing the levels of the land, and capacity of the culvert under the bridge, and capacity of the stream. From this plat it appears that the capacity of the bridge to conduct water was one hundred thirty square feet, and the capacity of the stream at the bridge two hundred square feet. But it does not appear how the capacity of the stream was estimated,—whether from bank to bank at this bridge, or by a general average for some distance. The banks might be higher at some points than others. Defendant's expert witness testified that the area of the bridge was ninety-five square feet, and that, from three crosscut measurements of the stream,—one at the bridge,—he estimated the capacity of the water at one hundred twenty square feet. It was shown that the old culvert which had been filled in 1894 was upon the level prairie, and was ten feet long, and about ten or twelve inches high above the land. It was formerly constructed upon the level prairie, in no way connected with any depression or water way. It does not appear to what use it was put, and the defendant, for reasons not disclosed, filled it up. And if the defendant can be held liable for not maintaining this culvert upon the level prairie, merely to furnish an outlet for surface water, then it is liable for not putting in culverts sufficient to carry off surface water at any point along its line, regardless of natural depressions or water ways. But, as already stated, that question is not necessarily raised in this case.

Conceding the correctness of the proposition that defendant was bound to maintain this old culvert, it would have furnished about ten square feet of discharging capacity. From this evidence plaintiff draws a conclusion that defendant was the cause of his dam-

age, as follows: If the natural capacity of the coulee and old culvert have been obstructed to this extent, water to the extent of that amount of discharge was kept back, and made to stand on plaintiff's land. In other words, if the coulee had been permitted to carry its full capacity, and the old culvert its full capacity, then the water accumulating on the east side of the track would have been carried off so soon that plaintiff's grain would not have been injured. The evidence is altogether too indefinite to sustain such conclusion. It is conceded that defendant would be liable for damages resulting from its obstruction of the creek, but who can tell from the record whether this was the cause? Water was everywhere. No data is furnished as to the extent of the water back of and beyond plaintiff's land which had to pass out through this coulee. There is no evidence as to the amount of water that could pass through in any given time, as compared with the water to pass through, or how much longer it would take. Other water courses and culverts may have been obstructed, throwing water back to this stream which would not naturally flow there.

Damages cannot be predicated upon conjecture and mere speculation. From all the evidence in the case, we are forced to the conclusion that plaintiff has not shown that the acts charged are the proximate cause of the injuries alleged. It is unnecessary to consider the other points raised.

Order reversed, and new trial granted.