[Civil No. 1872. Filed April 19, 1921.]

[196 Pac. 1024.]

THE CITY OF GLOBE, a Municipal Corporation, Appellant, v. GEORGE E. SHUTE, FRANK W. SHUTE, and JULIUS A. PINYAN, Partners in Trade, Doing Business Under the Firm Name and Style of PALACE GARAGE, Appellees.

1. MUNICIPAL CORPORATIONS — CITY LIABLE FOR IMPROPERLY CONSTRUCTED DRAIN DIVERTING WATER FROM NATURAL STREAM.—A city was liable for damage to property caused by water from

1. Liability of municipality for defective sewers or sewerage system, notes, 29 Am. St. Rep. 737; 14 Ann. Cas. 174.

Liability of municipality for overflow due to diverting stream into new channel, note, 12 A. L. R. 187.

defectively constructed drain, constructed by city to divert water of a natural stream; the city in such case being guilty of a positive act of wrongdoing, and the defense that it was acting in the performance of a public duty being therefore not available.

2. WATERS AND WATERCOURSES — RAVINE OR WASH WITH WELL-DEFINED CHANNEL IS "NATURAL STREAM" OR "WATERCOURSE."—A ravine or wash is a "natural stream" or "watercourse" within the law, where the rains or snows falling on the adjacent hills ran down the ravine or wash in a well-defined channel at irregular intervals.

3. PLEADING—COMPLAINT ALLEGING INADEQUACY OF DRAIN "OR" PERMITTING RUBBISH, ETC., TO ACCUMULATE IN DRAIN, HELD NOT DEMURRABLE BY REASON OF ALTERNATIVE ALLEGATIONS.—Owner's complaint against city for damage to goods from water resulting from inadequacy of drain "or" permitting rubbish, etc., to accumulate in the drain, *held* not demurrable as being in the alternative; it being apparent that the word "or" was not used in the alternative sense.

4. APPEAL AND ERROR—NO REVERSAL FOR ERROR IN PLEADING NOT AFFECTING SUBSTANTIAL RIGHTS.—In view of Civil Code of 1913, paragraph 423, judgment will not be reversed because of the use of the word "or" in the complaint, where it is apparent therefrom that the allegations were not intended to be in the alternative; such error, if any, not affecting the substantial rights of the parties.

APPEAL from a judgment of the Superior Court of the County of Gila. Frank B. Laine, Judge. Affirmed.

Mr. Clifford C. Faires and Messrs. Rice & Mathews, for Appellant.

Mr. Jay Good, for Appellees.

BAKER, J.—This action is brought to recover for damages to certain goods kept in a store, situated on the southerly side of Oak Street, in block 77, of the city of Globe, occasioned by the flooding of the store, during a heavy rainstorm on the fourteenth day of July, 1919. It is claimed that the flooding was caused by an insufficient drain constructed by the city. The city demurred to the complaint on the ground that the

same does not state facts sufficient to constitute a cause of action. This demurrer was overruled. The case was tried to a jury, and there was a verdict and judgment in favor of the plaintiffs for the sum of fourteen hundred dollars. From this judgment the city brings this appeal.

The only question presented for decision is the sufficiency of the complaint to state a cause of action. The judgment is not otherwise questioned, and the facts as proven at the trial are not before us. Although the complaint is far from being an orderly statement of facts and is very inartistically drawn, yet it is possible to pick out two or three allegations which we think support the conclusion we have reached. The complaint alleges:

"That prior to said date last above mentioned, the defendant, its agents, servants, and employees, did construct, caused to be constructed, or permitted others to construct, and was at the date last mentioned controlling, managing, using, operating, and maintaining a certain flume, channel, viaduct, culvert, tunnel, or draw constructed for the purpose of draining water from abutting premises and for the purpose of conveying both the surface water from the hills in the easterly part of said city and the water from what is known as McCormick Wash in said city of Globe, down said flume, channel, viaduct, culvert, tunnel, or draw from the easterly part of the city of Globe to a point where the same enters into Pinal Creek in said city of Globe. . . . "

The complaint proceeds:

"That the injuries and damages sustained as aforesaid by plaintiffs were occasioned, caused, and brought about by and through the negligence of the city of Globe in having improperly constructed, caused to be constructed, permitted to be constructed, or in permitting obstructions to be placed in the above-mentioned flume, channel, viaduct, culvert, tunnel, or draw, and in not constructing or having con-

structed such flume, channel, viaduct, culvert, tunnel, or draw large enough to carry off the water, rubbish, earth, sand, rock, gravel, débris, and other material that would come down said flume, channel, viaduct, culvert, tunnel, or draw during heavy rains, or in allowing obstructions to be placed therein so that the water, rubbish, earth, sand, rock, gravel, débris, and other material could not in times of heavy rains, pass down the same, or, in permitting rubbish, earth, sand, rock, gravel, débris, and other material to accumulate in said flume, channel, viaduct, culvert, tunnel, or draw so that in times of heavy rains it would cause the same to overflow and flood adjacent property.

"That said flume, channel, viaduct, tunnel, or draw, constructed and maintained as aforesaid by said city of Globe, passes just in the rear of plaintiffs' place of business in the said city of Globe, then crosses one of the said alleys that run in a northerly and southerly direction through said block No. 77 in said city, thence under the Fisk Building, thence under the Post Office Building, and thence under Broad Street, a street in said city that is kept and maintained by said city, and finally empties into Pinal Creek in said city of Globe."

It is argued by counsel for the city that the accepted rule of law is that—

"Where power is conferred on public officers or a municipal corporation to make improvements, such as streets, sewers, etc., and keep them in repair, the duty to make them is *quasi* judicial or discretionary, involving a determination as to their necessity, requisite capacity, location, etc.; and for a failure to exercise this power, or an erroneous estimate of the public needs, no civil action can be maintained."

Numerous authorities are cited in support of the rule. 19 R. C. L., p. 1089; *Mills* v. *City of Brooklyn,* 32 N. Y. 489; *Manning* v. *City of Springfield,* 184 Mass. 245, 68 N. E. 202; *Harrington* v. *Woodbridge Tp.,* 70 N. J. L. 28, 56 Atl. 141; *Dudley* v. *Village of Buffalo,* 73 Minn. 347, 76 N. W. 44; *Knostman & Peterson Fur. Co.* v. *City of Davenport,* 99 Iowa, 589,

68 N. W. 887; *Johnston* v. *District of Columbia,* 118
U. S. 19, 30 L. Ed. 75, 6 Sup. Ct. Rep. 923 (see, also,
Rose's U. S. Notes).

But there is another side to the case. The rule of
nonliability laid down in the foregoing cases does not
extend to positive wrongdoing by municipal authori-
ties. The difficulty is not in understanding the rule,
because that is plain, but in applying the rule to cases
as they arise, because there are other rules well es-
tablished by the highest authority holding cities liable
in private actions for damages in certain cases caused
by sewers, etc., constructed under municipal author-
ity. It will not do to take the general language found
in the cases too broadly, because there is danger, if
this is done, in putting the case under consideration
in the wrong class. In 19 R. C. L., p. 1091, it is said:

"Care, however, should be taken to distinguish be-
tween such cases as the foregoing and cases in which
a municipality makes inadequate provision to prevent
an injury due to causes for which it is itself respon-
sible, or by the construction or use of a public work
of inadequate size causes an injury to land which
would have been free from injury if no public work
had been constructed. In such cases that the injury
was due to the inadequate size of a public work is no
defense."

A very limited research discloses to the judicial
mind a number of decisions, holding the municipality
liable for damages caused by a sewer, etc., of insuffi-
cient size, or dimensions, constructed by the munici-
pality. Some of these cases will be noted. While
the facts differ, the principles involved in the cases
are applicable to and should rule the present case.

The grounds of the decision in *Wilson* v. *Boise
City,* 20 Idaho, 133, 36 L. R. A. (N. S.) 1158, 117
Pac. 115, are thus stated in the syllabus of the case:

"Where a city diverts a stream of water from its
natural channel and undertakes to convey the same by

means of an artificial channel or canal, it should be held liable for the exercise of reasonable care and diligence in constructing a channel of sufficient size to carry the volume of water that may be reasonably anticipated or expected to flow down the same, and for the maintenance of the same in a reasonably safe condition."

In *Wilson* v. *Boise City*, 6 Idaho, 391, 55 Pac. 887, the court held that the city was guilty of negligence in not constructing and maintaining a canal of sufficient size to convey the waters of Cottonwood Creek from the mouth of the canyon to the Boise River in times of high water.

In *Kansas City* v. *King*, 65 Kan. 64, 68 Pac. 1093, the Supreme Court of Kansas held the city liable for damages caused by flooding on account of the inadequacy of a sewer to carry off the flood waters. See *King* v. *City of Kansas City*, 58 Kan. 334, 49 Pac. 88.

In *Rochester White Lead Co.* v. *City of Rochester,* 3 N. Y. 463, 53 Am. Dec. 316, it was held that—

"The city of Rochester, having power 'to cause common sewers, drains, etc., to be made in any part of the city,' directed a culvert to be built for the purpose of conducting the water of a natural stream which had previously been the outlet through which the surface water of a portion of the city had been carried off. A freshet having occurred, the culvert, in consequence of its want of capacity and the unskillfulness of its construction, failed to discharge the waters, so that they were set back upon the factory of the plaintiffs and injured their property situated therein. Held, that the city corporation was liable for the damage."

In *Mootry* v. *Town of Danbury*, 45 Conn. 550, 29 Am. Rep. 703, the authorities of the town built a bridge in such a manner as to set back the water of the stream upon the plaintiff's land. It was held that the town was liable to the plaintiff for the damage done.

In *Young* v. *City of Kansas*, 27 Mo. App. 101, the city was held liable for damages caused by a culvert built in the stream where one of the defendant's streets crossed the same, insufficient in size to carry off the water of the stream. The court said:

"The defendant did not have to build a culvert at all, but in building a culvert, when it was determined to build one, the defendant had to build one in accordance with the requirement named, i. e., so as not to obstruct the water of the stream, to the injury of others. The defendant had to build a sufficient culvert; the defendant had not the right, in building a culvert, to create a nuisance. Hence, the act of determining the dimensions of the culvert was a ministerial and not a judicial act; and the defendant was liable for all damages caused by the insufficiency of the said dimensions."

In *McClure* v. *City of Red Wing*, 28 Minn. 193, 9 N. W. 769, Judge MITCHELL, in writing the opinion of the court, says:

"The true rule to adopt in such cases is that no one has a right to obstruct or divert such waters so as to cast them upon the property of others to their injury. When, in the judgment of a municipal corporation, it becomes necessary, in making a public improvement, to obstruct the natural channel of such a stream, or to divert it into a sewer or other artificial channel, it is bound to provide adequate and proper culverts, sewers, or other artificial channels, to carry off the water without injury to the property of others, and to exercise reasonable skill, care and judgment in so doing; and if they fail to exercise such reasonable care, skill and judgment, they will be liable if injury ensues to others. They have no absolute right in such cases to dam up the natural channel, and divert the water by artificial means upon private property. If any such right is necessary for public purposes, they must obtain it by the exercise of the right of eminent domain, as in any other case of taking private property for public uses."

Judge MITCHELL further says:

"In a broken and bluffy region of country, like that part of southeastern Minnesota adjacent to the Mississippi River and its tributaries, intersected by long, deep coulees or ravines, surrounded by high, steep hills or bluffs, down which large quantities of water from rain or melting snow rush with the rapidity of a torrent, often attaining the volume of a small river, and usually following a well-defined channel, it would be manifestly inappropriate and unjust to apply the rules of common law applicable to ordinary surface water. In many respects such streams partake more of the nature of natural streams than of ordinary surface water, and must, at least to a certain extent, be governed by the same rules."

The text-writers state the principles upon which the foregoing cases are decided in different ways. In Farnham on Waters and Water Rights, volume 2, paragraph 184, it is said:

"There is no right on the part of a municipal corporation or a drainage or road district to alter the course of drainage so as to throw water on property where it does not naturally flow. The municipal corporation stands upon the same footing as a private individual and incurs the same liability when it injures the land of a private individual by throwing thereon water which does not naturally flow there."

In Dillon on Municipal Corporations, volume 4 (fifth edition), paragraph 1731, the author there states:

"That a municipality has not the right with respect to natural streams to injure the property of others by badly constructed and insufficient culverts or passageways obstructing the free flow of water."

In 6 McQuillin on Municipal Corporations, paragraph 2694, the author there states:

"In any event, if a municipality itself changes the natural flow of water and constructs ditches or drains

to carry it off, which are inadequate for the purposes, it will be liable for damages thereby created.''

Reverting to the pleadings, it will be noticed that it is alleged that the drain doing the damage to the plaintiffs' property was constructed by the city ''for the purpose . . . of conveying . . . the water from what is known as McCormick Wash in said city of Globe, down said flume, channel, viaduct, culvert, tunnel, or draw from the easterly part of the city of Globe to a point where the same enters into Pinal Creek in said city of Globe.'' It is not alleged in so many words that the water which came down the McCormick Wash during times of heavy rains flowed in another direction from the premises of the plaintiff, but we gather as much from the general tenor of the complaint. Although the allegations are not as full and complete as they ought to be, still we think they are sufficient to bring the case within the principles expounded in the foregoing authorities. It appears to be a clear case of negligent interference with a natural stream. If the allegations of the complaint are true, the city diverted the water flowing in the McCormick Wash and conveyed it by means of a drain in the neighborhood of the plaintiff's premises. The drain was too small to carry the water, rubbish, etc., which came down the wash in the time of a freshet, and as a consequence the drain became clogged, and the water overflowed and flooded the premises of the plaintiffs and damaged their goods. Clearly, the city was guilty of a positive act of wrongdoing and cannot be heard to defend on the ground that in building the drain the city was in the performance of a public duty exercising *quasi* judicial or discretionary power as to the capacity, size, and dimensions of the drain, and is therefore not liable. It is true the city had the right to build the drain, but it had no right to commit

what was practically a trespass upon the plaintiff's premises. A municipality has no greater right than an individual to divert the waters of a natural stream by means of an insufficiently constructed drain or other artificial channel, and thereby damage the property of an abutting owner. This is clearly the law.

" 'A city has no more right to plan or create an unsafe and dangerous condition in one of its public streets than it has to plan or create a public nuisance'; and it may be added that it has no such right in respect to the creation and maintenance of drains and sewers that are insufficient and damaging to abutting property owners." *Arndt* v. *City of Cullman,* 132 Ala. 540, 90 Am. St. Rep. 922, 81 South. 478.

The distinction between the present case and the decisions cited by counsel for the municipality is well defined. None of these decisions were concerned with the diversion of the waters of a natural stream by means of an insufficiently constructed artificial channel or water-way. They are all cases concerning surface waters.

"The difference between surface waters and those collected and flowing in a watercourse is well recognized, and the same rules by no means apply to one as to the other." *San Gabriel Valley Country Club* v. *Los Angeles County,* 182 Cal. 392, 9 A. L. R. 1200, 188 Pac. 554.

The question presented and determined in these cases was manifestly different from the question here where the municipality diverted the waters of a natural stream by means unnecessarily injurious to the plaintiffs.

We find no difficulty in holding that a ravine or wash is a "natural stream" or "watercourse," in the sense of the law, where the rains or snows falling on the adjacent hills run down the ravine or wash in a well-defined channel at irregular intervals. Farnham

on Waters and Water Rights, par. 187; *Gibbs* v. *Williams,* 25 Kan. 214, 37 Am. Rep. 241; *San Gabriel Valley Country Club* v. *Los Angeles County, supra; McClure* v. *City of Red Wing, supra.*

Only one other point need be mentioned. The complaint states that the damages complained of were occasioned by the inadequacy of the drain "or" by permitting rubbish, etc., to accumulate in the drain. It is claimed that the allegations are in the alternative, and that the complaint is demurrable for that reason. We quote from Webster's International Dictionary:

"*Or* may be used to join as alternatives terms expressing unlike things or ideas or different terms expressing the same thing or idea."

It is apparent from the whole pleading that the inadequacy of the drain was the gist of the matter, and that the pleader by the reference to the rubbish, etc., accumulating in the drain, only meant to express the same thing or idea, although he used the alternative "or" in expressing the thought.

It may be added that if the complaint was uncertain and ambiguous, the city could have moved the court to require the pleadings to be made more certain and definite. Rev. Stats. Ariz., par. 475.

In any event, we will not reverse a judgment on account of errors in the pleading not affecting the substantial rights of the parties. We are forbidden to do this. Rev. Stats. Ariz. 1913, par. 423. The record of the trial is not before us, and we are therefore unable to say that the error complained of proved to be prejudicial to the defendant.

We have reached the conclusion that it was not error to overrule the demurrer, and the judgment is therefore affirmed.

ROSS, C. J., and McALISTER, J., concur.