[Civil No. 4021.   Filed May 29, 1939.]

[90 Pac. (2d) 1004.]

SALT RIVER VALLEY WATER USERS' ASSO-
CIATION, a Corporation, Appellant, v. RICH-
ARD BLAKE, Appellee.

Messrs. Sloan, Scott & Green, for Appellant.

Mr. L. C. McNabb and Mr. J. C. Wanslee, for Appellee.

LOCKWOOD, J.—Richard Blake, hereinafter called plaintiff, brought this action against Salt River Valley Water Users' Association, a corporation, hereinafter called defendant, for damages caused through the alleged negligence of the latter. The jury returned a verdict in favor of plaintiff in the sum of $900 and after the usual motion for new trial was overruled, the matter was brought before us on appeal.

There are two questions involved, (a) was defendant's negligence the cause of the admitted injury to plaintiff's property, and (b) if it was, did the jury properly fix the amount of the damages. So far as the last question is concerned, while there is much conflict in the evidence, we think there is sufficient to sustain the verdict of the jury on this point. The real issue is whether the defendant's negligence caused the damage.

The facts as shown by the evidence are as follows: Plaintiff was in possession, under a lease, of forty acres of land, and on the 23d of March, 1937, there was growing thereupon a large and valuable crop of lettuce.

Immediately adjacent thereto was a certain ditch operated by defendant as a part of its irrigation system. This ditch had a normal carrying capacity of approximately two thousand miner's inches of water when running free. Just below plaintiff's land the county of Maricopa had recently installed a large culvert in the ditch, which was capable of passing four to five thousand miner's inches when unobstructed. At times the ditch had checks placed across it just below the culvert, for the purpose of irrigating a certain tract of land owned by one Williams, and at these times the carrying capacity of the culvert was reduced to about fifteen hundred miner's inches through the raising of the level of water in the ditch by the checks. The ditch had been carrying no water for several days before the 23d of March, because the culvert just referred to was being installed, but about 5 o'clock that evening the local zanjero turned into the ditch from the main canal eight hundred and seventy-five miner's inches of water, and the headgate was locked so that it would not permit more than this amount to come through from the canal during the night. He then followed down the ditch, turning the water out to various farmers in such quantity as they had required, and when he reached the culvert found there was approximately three hundred and fifty miner's inches flowing at that point, and placed checks across the ditch to turn water to the Williams land. At that time there was no brush nor trash in the ditch, and the water was flowing through the culvert unobstructed except for the checks above referred to. At 10:30 that night he again inspected the water at the culvert, and found it free from any obstruction, and with the water flowing freely. About 3:30 in the morning plaintiff, who was sleeping in his house close by the ditch bank, happened to awaken and found a foot or two of water on the floor of the house. He immedi-

ately realized there had been an overflow from the ditch somewhere, arose and went out to inspect the cause. He found the culvert in question practically choked completely by weeds, tree limbs and brush of the description found on the ordinary countryside, and the water flowing onto his land over the ditch bank. It was evident that the water had overflowed at various places for about one hundred seventy-five yards of the bank, but at the time plaintiff arose most of the water was passing through a break in the ditch at a place where it had been cut by some unknown parties some time previous and repaired by defendant's employees. Plaintiff awakened Williams, and the two went to the home of the zanjero, who immediately relieved the pressure of water by turning it out into other ditches, and then went down with plaintiff and Williams to the culvert, where they succeeded in clearing it from the accumulated debris. As soon as this was done, the water dropped practically instantly to such a level that it no longer overflowed the ditch at any point.

The testimony of all of the witnesses is to the effect that the cause of the overflow was the choking of the culvert with debris, and if it had not so choked there would have been no flood nor damage to plaintiff.

Plaintiff in his complaint, alleges that more water was turned into the ditch by defendant than it would carry; that the ditch was operated with weak and insecure banks, and was not properly inspected by defendant. So far as the volume of water is concerned, the undisputed evidence is that no more was in the ditch that night than it would have carried, regardless of the weak place in the bank above referred to, had the culvert not choked up, and also that with the choking up as it occurred, the water would have overflowed the banks and flooded plaintiff's premises and caused the damage as aforesaid, had there been no weak spot in the ditch bank.

The only theory on which it may be held that defendant's negligence caused plaintiff's damage is that it was responsible for the clogging of the culvert. Defendant is engaged in the business of supplying irrigation water for some 250,000 acres of land in the Salt River Valley. In so doing it maintains a very large irrigation system, operating many miles of open ditches as an essential and integral part of such system, and without these ditches, it would be impossible for defendant to carry on its business. What then is its duty in regard to the care it must exercise in keeping these ditches in such a condition that they will not clog up and cause the water to overflow to the damage of those who own property adjoining thereto.

■■ We have held several times that the defendant is not an insurer against damage from its irrigation system, but is only required to exercise reasonable care to see that the system is properly constructed, maintained and operated. *Salt River Valley Water Users' Assn.* v. *Stewart,* 44 Ariz. 119, 34 Pac. (2d) 400; *Salt River Valley Water Users' Assn.* v. *Delaney,* 44 Ariz. 544, 39 Pac. (2d) 625; *Salt River Valley Water Users' Assn.* v. *Arthur,* 51 Ariz. 101, 74 Pac. (2d) 582. What then does reasonable care require in regard to seeing that its irrigation ditches are kept free from the debris which must be expected to fall therein in the usual course of events? We think this duty is to refrain from itself causing any debris to fall into the ditches and to remain there; to inspect them at reasonable intervals to see that none has gotten therein through fortuitous causes, and if it has notice, either actual or constructive, that an undue amount has accumulated, to remove it promptly.

■■ It is, of course, the law that a plaintiff alleging negligence must prove it, and that it is not incumbent upon defendant to prove an absence thereof.

In the present case, therefore, it was incumbent upon plaintiff to prove affirmatively that the defendant had failed in some manner in performing its duty aforesaid. What is the evidence on that point? There is nothing to show that the debris in the ditch was placed there on account of any affirmative act of the defendant, such as the cutting of growing grass and brush from the ditch bank, but allowing the debris to fall therein. There is no evidence that defendant had any actual knowledge that there was anything in the ditch which would cause the culvert to become stopped up, or that the defendant failed at reasonable intervals to have its ditches inspected for the purpose of determining whether they needed cleaning, and there is nothing to show at what time or place, or from what source, the debris, which it is agreed caused the culvert to be stopped up and thus plaintiff's crops to be injured, got into the ditch in the first place. If there were any evidence that the ditch had been obstructed for such a length of time that the defendant, with a reasonably frequent inspection, should have discovered the same, it might well be held that it had constructive notice of the condition and was responsible therefor. But the only evidence from which even a guess might be made as to when and how, and from where, the debris got into the ditch is that there was a high wind about midnight of the twenty-third, and that a farmer further up on the ditch had a short time previously been cutting some cottonwood trees.

We think from the evidence we have recited that there could be only surmise as to the time at which the substances which caused the damage got into the ditch, and the cause and source thereof. We have repeatedly held that juries may not return verdicts on surmise or speculation, and that when damage may have resulted from one of several causes, and that it

is as probable that it may have been a cause for which defendant was not responsible as one for which it was, a plaintiff may not recover. In the present case the most reasonable surmise is that the wind occurring about midnight of the twenty-third blew the debris, which stopped up the culvert, into the ditch. Certainly no one could say that, if this be true, it was defendant's negligence which caused the damage. If we do not adopt this theory, there is not a scintilla of evidence to show how or when the debris got into the ditch.

It is to be regretted that plaintiff suffered the loss which he did, but on the other hand it is neither law nor justice that the defendant should be made to pay therefor, unless it appears from the evidence that it has, in some manner, been derelict in its duty towards plaintiff, and this, we think, does not appear.

The judgment of the superior court is reversed and the case remanded with instructions to render judgment for defendant.

ROSS, C. J., and McALISTER, J., concur.