168 P.2d 245

**CITY OF TUCSON v. O'RIELLY MOTOR CO.**

No. 4775.

Supreme Court of Arizona.
April 22, 1946.

Darnell & Robertson and Bilby & Shoen-hair, all of Tucson, for appellee.

STANFORD, Chief Justice.

We will style the parties as they appeared in the superior court.

Judgment was given in the trial court by direction to jury of verdict for plaintiff for damages caused by negligence of defendant in permitting the property of plaintiff to be flooded as hereinafter set forth. After plaintiff's case was finished defendant rested without offering testimony. A motion by plaintiff for a directed verdict was granted; judgment was entered and it was from said judgment and the court's denial of defendant's motion for a new trial that this appeal is brought to this court.

Through the City of Tucson, Arizona, there ran an arroyo, the course being southeast to the northwest. Rains falling east and southeast of the city and rains falling within the city drained into this arroyo and flowed to the Santa Cruz River bed to the west of the city.

In February, 1925, the City of Tucson commenced work for the enclosure and covering of said arroyo, changing the course of the arroyo only in certain instances. That work was completed December 25th, and in August, 1930, the city extended the work to the easterly part of the City of Tucson, the same being completed in February, 1931. Thereafter the city used, operated, controlled and maintained the said

Thomas J. Elliott, City Atty., of Tucson, for appellant.

tunnel or culvert. The box, tunnel or culvert enclosing the arroyo made existing bridges over the same a part of the enclosure, but as we understand the testimony, the inside measurement of the construction was 10 x 10 feet and there were two of such tunnels side by side.

The arroyo originally was in size from 75 to 100 feet in width at the top and from 10 x 10 feet in width at the bottom.

The property line of the plaintiff was approximately 66 feet north of the bank of the original arroyo.

Owners of property had their properties flooded by rains that fell in 1933, 1935, 1937, 1939, 1940 and 1943. The rain of 1940 was so severe complaint was made and in many instances settlement made by the city with property owners. Numerous complaints were made to the city concerning the condition of the arroyo as constructed.

In addition to reducing the size of the arroyo, the complaint of the plaintiff was that the natural course of the arroyo was changed in instances by the City of Tucson; that it was narrowed and that sufficient openings from gutters, ditches and places where water naturally drained into the arroyo, were not provided by the city; that within the culvert or arroyos so enclosed there were various obstructions that retarded the flow of floods such as pipes and sewer lines. That on the 24th day of September, 1943, heavy rains fell in the City of Tucson and vicinity and in the vicinity draining into said culvert and because of the narrowed condition of the culvert or enclosed arroyo, the waters within said tunnels got out of bounds and flooded the premises of the plaintiff.

The facts of the case show that for some four days the plaintiff was without the use of his premises by reason of flood waters and the damage caused thereby; that the plaintiff was in the business of conducting a retail automobile sales agency and repair shop on the premises in question and that the same were damaged by reason of said flood.

The three propositions of law presented by defendant sufficiently set forth the matters presented in its ten assignments of error.

Proposition of Law No. 1. Where the evidence shows that the plaintiff's damages may have resulted from one of several causes but only one of the causes may be attributed to the defendant's negligence, the plaintiff must be denied recovery.

Proposition of Law No. 2. In all cases both at law and in equity either party shall have the right to submit all issues of fact to a jury .

Proposition of Law No. 3. Where affidavits in support of motion for postponement of trial discloses sufficient cause therefor, it is an abuse of discretion of the court to deny such postponement.

Supporting its first proposition defendant cites, among other cases, the cases of Owl Drug Co. v. Crandall, 52 Ariz. 322, 80 P.2d

952, 120 A.L.R. 1521; Esson v. Wattier, 25 Or. 7, 34 P. 756; Ramberg v. Morgan, 209 Iowa 474, 218 N.W. 492, 493; Treichel v. Great Northern Ry. Co., 80 Minn. 96, 82 N.W. 1110. And quotes from the case of Salt River Valley Water Users' Ass'n v. Blake, 53 Ariz. 498, 90 P.2d 1004, 1006. The facts in the case of Salt River Valley Water Users' Ass'n v. Blake, supra, are: Plaintiff had 40 acres of land planted to a crop of lettuce. During the night time the land was flooded to the extent that the water came into the house a foot or two deep and damage was alleged. The Salt River Valley Water Users' Ass'n maintained a lateral, or ditch, which carried the water in front of the house and property of Blake. The damage was caused at 3:30 a. m. by limbs from trees and from other things collecting in a culvert that recently had been reconstructed but prior thereto the zanjero had investigated and seen that the culvert was clear. The jury gave damages. This court reversed the case. Among other things this court said:

"We have held several times that the defendant is not an insurer against damage from its irrigation system, but is only required to exercise reasonable care to see that the system is properly constructed, maintained and operated. (Citing cases.) What then does reasonable care require in regard to seeing that its irrigation ditches are kept free from the debris which must be expected to fall therein in the usual course of events? We think this duty is to refrain from itself causing any debris to fall into the ditches and to remain there; to inspect them at reasonable intervals to see that none has gotten therein through fortuitous causes, and if it has notice, either actual or constructive, that an undue amount has accumulated, to remove it promptly.

"* * * There is no evidence that defendant had any actual knowledge that there was anything in the ditch which would cause the culvert to become stopped up, * * *." In the instant case applying it so far as we can to the facts here, there is evidence that the defendant had actual notice over a period of years that the culvert, arroyo or tunnel did not carry the flood waters that would often come down its path.

Defendant refers to the case of Sieler v. Whiting, 52 Ariz. 542, 84 P.2d 452, 454. This is a case of an automobile accident where it is alleged that certain acts were negligent. The gist as intended to be conveyed by defendant is: "It is, of course, incumbent upon a plaintiff alleging negligence on the part of a defendant to show affirmatively by evidence sufficient to satisfy a reasonable man that the negligence complained of actually existed. It is not sufficient that the facts are such that it might have existed. It must appear affirmatively that it did. * * *" Defendants cite McQuillin Municipal Corporations, 2d Ed., Vol. 6, Sec. 2875, from which we quote:

"Watercourses, liability in regard to. Where a watercourse passes through the boundaries of a municipality, there is no duty on its part to keep the stream in a safe condition or free from obstructions; and this is so although the stream has been declared a public highway by statute. * * *

"There is no liability for consequential damages resulting from improvements made in watercourses, where authorized and where there is no negligence, the same rule applying as in case of other public improvements, although there is liability where a public improvement obstructs a watercourse. A municipality is not liable for damage to private premises due to the overflow of a natural stream because it constructed artificial conduits and hard surfaced streets causing the surface waters, which would otherwise flow into the stream directly and a portion thereof seep into the ground, to pass through such conduits into the stream."

We think the rule stated in McQuillin, Municipal Corporations, 2d Ed., Vol. 6, Sec. 2877, is applicable in this case:

"Where a municipal corporation constructs a culvert for the passage of the waters of a watercourse or natural drain, it will be liable for damage caused by the escape of water therefrom to adjacent lands due to a negligent construction of the culvert, or its inadequacy (according to the rule in many states) to carry away water ordinarily coming into it, or for failure of the municipality to remove obstructions therein; and a culvert obstructing a watercourse, to the injury of riparian owners, is a nuisance, and damages are recoverable.

"The culvert must be sufficient to accommodate, not only the natural and normal flow of the stream, for example where the culvert is constructed over a natural water course, but such abnormal and excessive flow as may reasonably be anticipated in time of high water and flood. However, 'there is no duty to provide for floods so unusual and extraordinary as to bring them within the category of an 'act of God.' * * *"

In our case of City of Globe v. Shute, 22 Ariz. 280, 196 P. 1024, 1026, we stated the facts to be that the action was brought to recover for damages to certain goods kept in a store situated on the southerly side of Oak Street in a certain block in the City of Globe, occasioned by the flooding of the store during a heavy rain storm and it was claimed that the flood was caused by the insufficient drain constructed by the city. In that case we said:

"Reverting to the pleadings, it will be noticed that it is alleged that the drain doing the damage to the plaintiffs' property was constructed by the city 'for the purpose * * * of conveying * * * the water from what is known as McCormick Wash in said city of Globe, down said flume, channel, viaduct, culvert, tunnel or draw from the easterly part of the city of Globe to a point where the same enters into Pinal Creek in said city of Globe.' It is not

alleged in so many words that the water which came down the McCormick Wash during times of heavy rains flowed in another direction from the premises of the plaintiff, but we gather as much from the general tenor of the complaint. Although the allegations are not as full and complete as they ought to be, still we think they are sufficient to bring the case within the principles expounded in the foregoing authorities. It appears to be a clear case of negligent interference with a natural stream. If the allegations of the complaint are true, the city diverted the water flowing in the McCormick Wash and conveyed it by means of a drain in the neighborhood of the plaintiffs' premises. The drain was too small to carry the water, rubbish, etc., which came down the wash in the time of a freshet, and as a consequence the drain became clogged, and the water overflowed and flooded the premises of the plaintiffs and damaged their goods. Clearly the city was guilty of a positive act of wrongdoing and cannot be heard to defend on the ground that in building the drain the city was in the performance of a public duty exercising quasi judicial or discretionary power as to the capacity, size, and dimensions of the drain, and is therefore not liable. It is true the city had the right to build the drain, but it had no right to commit what was practically a trespass upon the plaintiff's premises. A municipality has no greater right than an individual to divert the waters of a natural stream by means of an insufficiently constructed drain or other artificial channel,

and thereby damage the property of an abutting owner. This is clearly the law."

The case of City of Globe v. Shute, supra, was quoted with approval in the case of City of Bristow v. Schmidt, 170 Okl. 338, 40 P.2d 656.

The case of Powelson v. City of Seattle, 87 Wash. 617, 152 P. 329, 330, is where the plaintiff's plant was located in the basement of a building and the action was brought to recover damages claimed to have been caused by waters through the negligence of the city in construction of a drain. The drain proved inadequate to carry off the water and as consequence the basement was filled with several feet of water and several days later employees of the city dug up the drain which was found to have been filled with rock and sand. The court said:

" 'Where a street is improved across such natural water course, it is incumbent upon the municipality, not only to make an adequate bridge, culvert, or passage for the water in the first instance, but to keep it in such condition that it shall not obstruct the stream thereafter.' "

The testimony in this case shows that the culvert or drain was many blocks long and it extended past the property of plaintiff; that during the rain and before the flood reached plaintiff's place of business, Mr. O'Rielly, the president of the plaintiff company, went to the head of the enclosure or boxed tunnel several blocks away and saw the water coming upon it and saw that the tunnel could not hold all of the water and

that it came over the tunnel and down through the city.

The facts in the case of Cain v. City of Jackson, 169 Miss. 96, 152 So. 295, are that a Mrs. Cain brought action against the City of Jackson for damages resulting from water overflowing her premises which lie along the banks of a creek, the controversy there being the failure of the city to provide and maintain a sufficient and adequate outlet under a paved street crossing the creek to care for the water that came down during heavy and excessive rains. Judgment was given against her in the lower court. She appealed and the case was reversed in her behalf. Complaint was made of instructions submitted by the city, the first instruction being:

"* * * that the city was only required to provide a sufficient outlet to take care of the water of the stream in question on all occasions except at times of unprecedented rainfall, or when logs or debris clogged said outlet; and, second, that the city was not liable for damages for obstructions or debris in said stream which were not placed there by it, even though such obstructions or debris may have caused the stream to flood the property of appellant. * * *

"The stream in question provided drainage for a large area adjacent thereto, and when the appellee city constructed across this stream a paved street, and a bridge, the foundation of which obstructed the natural flow of water in the stream, it was under the duty to provide adequate outlets or culverts under this street to care for such rainfall as might be reasonably expected from past experience, and it is not sufficient that the outlets provided in the first instance were adequate but it must be at all times exercise reasonable care to maintain the sufficiency and adequacy of such outlets. City of Vicksburg v. Porterfield, 164 Miss. 581, 145 So. 355.

"There was evidence, oral and photographic, showing the accumulation of a large quantity of logs, trees, and debris in the mouths of openings of these culverts which would tend to greatly obstruct the flow of water through them. It was a question to be determined by the jury, under proper instructions, whether these culverts so obstructed provided adequate drainage, and, if not, whether the city used ordinary care to keep them free from obstructions and in condition to afford adequate drainage. Since the city placed the foundations of its bridge and paved way in the bed of this stream, and was, therefore, under the duty to provide and maintain adequate outlets for the water that was accustomed to flow in the stream, it was not relieved of its duty to keep these outlets free from obstructions, and adequate for the purpose, by reason of the fact that the obstructions and debris which accumulated at the mouth of the culverts and obstructed the flow of water were not placed there by the city. * * *"

In the present case by oral and photographic testimony it was shown that there

was a great accumulation of debris inside the tunnel in addition, of course, to the pipe and sewer system placed there by the city itself.

We refer to defendant's proposition No. 2: "In all cases both at law in equity, either party shall have the right to submit all issues of fact to a jury."

At the close of plaintiff's case the defendant made the following motion: Mr. Elliott: If your Honor please, we move at this time that judgment be directed or entered for the defendant in this case for failure of proof of the allegations as contained in the complaint, the material allegations."

This motion was overruled by the court, and the court thereupon said:

"I assume you will want a little time, Mr. Elliott.

"Mr. Elliott: If your Honor please, I would. I would like to have time to organize my case, say half an hour. If it isn't too much, say three-quarters of an hour.

"The Court: I would say, suppose we make the hour three o'clock.

"Mr. Elliott: That is satisfactory".

After recess Mr. Elliott for defendant stated: "At this time, if your Honor please, the defendant rests." Thereupon the plaintiff moved that the court direct the jury to return a verdict in favor of plaintiff in the amount prayed for in the complaint and on the grounds that nothing in the plaintiff's complaint has been controverted by the evidence, and for other reasons. Thereafter the court asked the attorney for the defendant if he wished to be heard further and the response was: "If your Honor please, nothing further than I said upon my motion for a verdict." The court thereupon granted plaintiff's motion and under the direction of the court the verdict was returned in behalf of the plaintiff in the sum of $5,494.07.

In the case of First National Bank v. Bach, 98 Or. 332, 193 P. 1041, 1042, the court said: "Both parties waived trial by jury by moving for a directed verdict. They thus submitted to the court whether as a matter of law a verdict should be directed for the plaintiff or for the defendant. Under such circumstances, the court should have decided the question. Patty v. Salem Flouring Mills Co., 53 Or. 350, 357, 96 P. 1106, 98 P. 521, 100 P. 298. * * *"

In the instant case the defendant did not in his lengthy argument following the motion ask for any feature of the case to be submitted to the jury and made no reservation whatsoever.

The case of Manska v. San Benito Land Co., 191 Iowa 1284, 184 N.W. 345, 18 A.L.R. 1430, gives us a short cut to the rule on this subject by reference to its notes stating the majority and minority rule. The majority rule stated is: "In a majority of the jurisdictions wherein the question has arisen, it has been held that where each of the parties to an action requests the court to direct a verdict in his favor, and

makes no request that the jury shall be allowed to determine any question of fact, the parties will be presumed to have waived the right to a trial by jury, and to have constituted the court a trier of questions both of law and of fact." Thereafter many scores of cases are cited supporting the majority rule.

Our own case of Garrett v. Reid-Cashion Land & Cattle Co., 34 Ariz. 482, 272 P. 918, 920, is where at the close of plaintiff's case defendant submitted a motion for a directed verdict and the court said: "The motion, while lacking in form and substance the common-law demurrer to evidence (Slocum v. New York Life Ins. Co., 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879, [Ann.Cas.1914D, 1029]; Hopkins v. Nashville, etc. Ry. Co., supra [96 Tenn. 409, 34 S.W. 1029, 32 L.R.A. 354]) had for its object and accomplishment the same purpose as the common-law demurrer to evidence. The movant thereof accomplished everything that might have been accomplished by a demurrer. When this demurrer or motion was interposed it admitted the truth of all the facts necessary to make out the case of the plaintiffs, and withdrew the case from the jury and submitted the application of the law upon the facts to the court."

In Fagerberg v. Phœnix Flour Mills Co., 50 Ariz. 227, 71 P.2d 1022, 1027, this court said, after reaffirming its holding in this respect in the case of Garrett v. Reid-Cashion Land & Cattle Co., supra:

"We think the effect of the various motions was such that the court was justified under our practice in dismissing the jury, on the ground that all of the parties had agreed there was no controversy in the facts, the issue remaining being one of law for the court. Further than that it appears from the record that, when the court announced that it was willing to discharge the jury and determine the case itself, no objection was made thereto by any of the parties. We think that such conduct estops the defendant from coming in, after the court has rendered a judgment against him, and claiming that error was committed by not submitting the case to the jury on the facts. * * *"

Defendant's last of the three propositions of law is: "Where affidavits in support of motion for postponement of trial discloses sufficient cause therefor it is an abuse of discretion for the court to deny such postponement."

Our Sec. 21-801, A.C.A.1939, is: "Whenever an action has been set for trial on a specified date by order of the court, no postponement of the trial shall be granted except for sufficient cause, supported by affidavit, or by consent of the parties, or by operation of law."

Sec. 21-802, A.C.A.1939, is: "Affidavit for postponement—For want of testimony—Admitting that witness would testify.—On an application for a postponement of the trial, if the ground for the application be the want of testimony, the party applying therefor shall make affidavit that such testimony is material showing the materiality thereof, and that he has used due dili-

gence to procure such testimony, stating such diligence and the cause of failure, if known, and that such testimony cannot be obtained from any other source; and if it be for the absence of a witness, he shall state the name and residence of the witness, and what he expects to prove by him; and he shall also state that the postponement is not sought for delay only, but that justice may be done. If the adverse party will admit that such evidence would be given and that it will be considered as actually given on the trial, or offered and overruled as improper, the trial shall not be postponed, and such evidence may be controverted as if the witness were personally present."

Council for defendant filed his affidavit in this cause on the 3d day of July, 1944 in which he stated in substance that he became attorney in the case on the 1st day of June, 1944, and that on that date he stipulated with the attorneys for plaintiff for a continuance of the case until July 6, 1944. The affidavit, in part, stated:

"That at the time said stipulation was entered into this affiant understood and believed that witnesses on behalf of defendant would be available to present technical testimony as experts on behalf of defendant, and relying on such understanding and belief affiant entered into said stipulation.

"That it was learned by affiant on July 2, 1944, that the witnesses relied upon as aforesaid to testify as experts on behalf of defendant, by reason of employment restrictions will not be available for the purpose of giving their opinion on certain hydrological and other data deemed by this affiant and absolutely necessary for a proper defense of this action."

Comparing the affidavit with our Sec. 21-802, supra, we find that it fails to comply with the requirements of this section. The affidavit does not state the name and residence of the witness and what the defendant expected to prove by the witness.

The judge trying this cause was the Honorable Henry C. Kelly of Yuma County, Arizona, and who was to arrive on the morning of July 6th, the date of trial. The affidavit referred to fails to state that affiant had used due diligence to procure such testimony.

12 Am.Jur., Continuances, Sec. 28, has the following to say: "The rule is practically universal that a continuance will not be granted to enable a party to obtain the testimony of an absent witness unless it appears that the applicant has used due diligence to procure the attendance of such witness or to obtain his testimony. * * *"

From 17 C.J.S., Continuances, § 22, we quote:

"As a general rule a continuance for want of preparation will be refused. An applicant, to be entitled to relief on such ground, must show some precise legal or strong equitable reason and the exercise of reasonable diligence in every direction in which he claims to be unprepared."

250

The case of Merryman v. Sears, 50 Ariz. 412, 72 P.2d 943, quotes with approval the following from the case of Arnett v. Peterson, 24 Ariz. 405, 210 P. 683: " 'A motion for a continuance is addressed to the sound judicial discretion of the trial court and, unless that discretion is abused it will not be interfered with by the appellate tribunal.' "

In this particular we hold, and it is our view, that the defendant wholly failed to meet the requirements of our statute in its application for a continuance; the trial court did not abuse its discretion and had no other discretion to exercise but to deny the motion for continuance.

In reference to the first contention of defendant that the property of the plaintiff was damaged through other causes than anything that could be attributed to this defendant, the allegations of the plaintiff's complaint were not contradicted by evidence. As heretofore shown by quoting from the proceedings, the defendant led the court to believe that evidence would be submitted, but the defendant at the time stated, rested its case without the submission of any evidence whatsoever. The testimony shows that many complaints were made to the City of Tucson for damages to property on the occasion of other floods mentioned, but the City of Tucson ignored all complaints. The testimony shows that the damages sustained were the result of the faulty construction of the tunnel in the bed of the arroyo; that the same was of insufficient size to carry the water; that often by reason of rainfalls coming down the arroyo not only was the tunnel improperly constructed to care for same, but it was entirely too small to carry the natural flow.

On defendant's second contention presented where it was claimed that the case should have been submitted to the jury, there having been no evidence submitted whatsoever, the trial court could do nothing more than to grant the motion of the plaintiff for a verdict, in accordance with cases we have quoted.

And now concluding, the three contentions raised by the defendant, we find no reversible error made by the trial court in any of the issues presented to us.

The judgment is affirmed.

LA PRADE and MORGAN, JJ., concurring.