## Pittsburgh v. Pennsylvania Milk Control Commission

686

*J. Frank McKenna* and *Robert B. Engel,* for appellant.

*Henry M. Bruner* and *Wm. F. Schutte,* for appellee.

*Daniels, Swope & First* and *Humes & Kiebort,* for intervenors.

KREIDER, J., July 18, 1955.—This is an appeal by the City of Pittsburgh and its assistant city solicitor, Robert Engle, on his own behalf as a consumer of milk, from General Order No. A-480 of the Pennsylvania Milk Control Commission effective April 1, 1954, fixing minimum milk prices to be paid to producers by dealers and charged by dealers to consumers in the Pittsburgh Milk Marketing Area.

Appellants in their brief have limited their appeal to one question of law, i.e.: "Did the Commission's procedure violate the legal and constitutional requirements of a fair hearing?" More specifically: Was it an abuse of discretion for the Milk Control Commission at the conclusion of the testimony in chief of Dr. W. L. Barr to refuse to grant appellant's motion for a continuance of the hearing to enable its attorney to prepare his cross-examination by examining a mimeographed exhibit presented by this witness, when the exhibit was in a form almost identical with other exhibits offered at previous hearings by the same witness and where the City of Pittsburgh was likewise represented by its counsel?

In accordance with the provisions of the Milk Control Law, Act of April 28, 1937, P. L. 417, 31 PS §700j-101, the Pennsylvania Milk Control Commission

conducted public hearings in Pittsburgh, on March 8 and 9, 1954. Similar hearings had been held on June 8, 9 and 10, 1953, on petition of the Greater Pittsburgh Milk Producers Association. Numerous other hearings for the same purpose have been held in the Pittsburgh area, specific reference in this case being made to those of January 9, 10 and 13, 1950, and September 29, 1952. *In all of those hearings the City of Pittsburgh had been represented,* as an interested party, *by counsel from the city solicitor's office.*

In order to appraise appellants' contention that they were deprived of a fair hearing in March 1954, notice must be taken of the procedure customarily followed, the data submitted and the methods of introducing it in evidence before the commission.

It appears from the record that in promulgating and revising price regulations in the Pittsburgh area the commission employs, as a primary tool, a survey-study of the cost of producing milk in the Pittsburgh milkshed. This study was prepared for the use of the commission by Dr. W. L. Barr, professor of farm management in the Department of Agricultural Economics and Rural Sociology of the Pennsylvania State University. The study covers the milk production year of 1947-1948. During hearings concerned with price regulation, the commission receives into evidence a cost figure representing the current cost of producing a hundredweight of milk in the particular area under consideration for price revisions. The cost figure varies but is based upon revisions of the cost of the elements considered to be the basic cost generating factors in the production of milk, as incorporated in the Pennsylvania State University study of 1947-1948.

This revised cost figure was prepared and presented to the commission in both the June 1953 and March 1954 hearings by Dr. Barr, who has appeared at

numerous other hearings in the Pittsburgh area. Dr. Barr testified at the March 1954 hearings in language almost identical with that of the June 1953 hearings. The only variation in his direct testimony in the instant proceeding is in the *current* "cost" figure and the current "cost of production" figure. The *elements* of the cost basis as set forth in the original study remained unchanged in both the June 1953 and March 1954 hearings.

On May 27, 1953, the commission mailed to the City of Pittsburgh a notice of a hearing to be held on June 8, 1953. It appears that with a maximum notice of 12 days the then assistant city solicitor, Albert D. Brandon, Esquire, appeared and, on behalf of the city and himself, subjected Dr. Barr to a searching cross-examination of his direct testimony in respect to the validity of the survey itself, the current cost of production figure and the methods used in deriving it.

At the March 1954 hearings the City of Pittsburgh was represented by its assistant city solicitor, Robert Engle, Esquire. At the conclusion of the direct testimony of Dr. Barr, Mr. Engle was given an opportunity to cross-examine him. He refused to do so and requested the commission to fix a future date at which time he could cross-examine this witness and assigned as his reason ". . . that Dr. Barr has presented here a detailed technical study and asking counsel at this time to cross-examine Dr. Barr with respect to the thirteen tables that are presented here does not afford us a proper opportunity to examine the figures, to analyze them and to make a study of them.*" Mr. Mr. Engle's request was refused and upon this refusal appellants rest their contention that they were deprived of a fair hearing.

---

* The Pennsylvania State University survey-study with cost elements revised to February 15, 1954.

The Milk Control Law, sec. 801, 31 PS §700j-801, requires: ". . . a hearing in which all interested persons shall be given reasonable opportunity to be heard. . . ." This is in conformity with the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, sec. 31, 71 PS §1710.31, which provides for ". . . reasonable notice of a hearing and an opportunity to be heard. . . ." This act also provides in section 32: ". . . Reasonable examination and cross-examination shall be permitted."

There is no question that ". . . the requirement of procedural due process applies to proceedings before administrative tribunals as well as judicial bodies. . . .": Dillner Transfer Co. v. Pa. P.U.C. (No. 1), 175 Pa. Superior Ct. 461, 468 (1954).

In State Board of Medical Education & Licensure v. Williams, 172 Pa. Superior Ct. 448, 452, 453 (1953), the court said:

" 'The essential elements of due process of law are notice, and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case' ": 12 Am. Jur., sec. 573, pp. 267, 268; Com. v. O'Keefe, 298 Pa. 169, 172 (1929).

In determining whether procedural due process has been complied with the law requires, in addition, that the ". . . 'rudiments of fair play' be observed . . .": Byers v. Pa. P.U.C., 176 Pa. Superior Ct. 620, 624 (1954); McCormick v. Pa. P.U.C., 151 Pa. Superior Ct. 196 (1943).

It does not appear from the record of the present case that appellants have been deprived of a fair hearing in violation of the requirements of due process. Appellants were given at least 20 days' notice. Opportunities to be heard and cross-examine were afforded. As stated, the City of Pittsburgh was represented at the prior hearings of June 1953 by counsel of the city

solicitor's office who appeared on less notice and demonstrated complete readiness and familiarity with substantially the same material and procedure. Furthermore, the record discloses no contradiction of the statement of the chairman of the commission that:

"The City of Pittsburgh has been interested in these hearings for many, many years and we have had similar testimony from Dr. Barr. . . ."

It does not seem that fair play should exact from the commission more than the expectation that another representative of the city's legal bureau would have examined the testimony taken at the 1953 hearing and, therefore, would be prepared to cross-examine when confronted with the same basic material. The record is devoid of any testimony which would demonstrate to this court that appellants were prepared and able to controvert the evidence adduced before the commission at the 1954 hearings or that this testimony was of such a nature as to entitle them to a continuance on the ground of unfairness or surprise. In 17 C. J. S. 203, Continuances, §22, it is stated:

"As a general rule a continuance for want of preparation will be refused. An applicant, to be entitled to relief on such ground, must show some precise legal or strong equitable reason and the exercise of reasonable diligence in every direction in which he claims to be unprepared."

See Standard Pennsylvania Practice, 1955 Edition, Vol. 4, page 617 and note 12 from which we quote:

"The refusal to grant a continuance is within the trial judge's reasonable discretion. . . . The same rule applies in administrative agency proceedings as in ordinary court proceedings": State Bd. of Med. Ed. v. Williams, 172 Pa. Superior Ct. 448 (1953). See also Slocock et al. v. Liggit, 326 Pa. 492 (1937), and City of Tucson v. O'Rielly Motor Co., 64 Arizona 240, 168 P. 2d 245, 252.

The record does not disclose an abuse of discretion by the commission or any grounds that support the appellants' contention of unfairness to them at the March 1954 hearings. The fact that Mr. Engle also appeals as an individual consumer does not, under the circumstances of this case, place him on a different footing. As an individual he was accorded the same opportunity to cross-examine as was his client, the City of Pittsburgh.

For the foregoing reasons appellants' petition does not present a valid appeal.

And now, July 18, 1955, the appeal filed in this case is dismissed at the cost of appellants.