435 P.2d 77

The CITY OF TUCSON, a municipal corporation, Appellant,

v.

Jennie WONDERGEM, surviving spouse of Peter Wondergem, deceased, Appellee.

No. 2 CA–CIV 342.

Court of Appeals of Arizona.

Dec. 11, 1967.

Rehearing Denied Jan. 15, 1968.

Review Denied Feb. 20, 1968.

Gordon S. Kipps, City Atty., Frederick S. Dean, Asst. City Atty., Tucson, for appellant.

Rees, Estes & Browning by William D. Browning, Tucson, for appellee.

MOLLOY, Judge.

This appeal reviews the action of a trial court in granting a new trial after a jury verdict in favor of the defendant, City of Tucson, in a wrongful death action.

The litigation arises out of a flash flood occurring in the Arroyo Chico, a main tributary of the much-litigated Tucson Arroyo.[1] The plaintiff's deceased met his death around 10:30 p. m., on August 22, 1961. The watershed drained by this particular arroyo had been subjected to substantial rains for a four to five day period prior to August 22, and on this date there occurred a heavy rain in the watershed. The heavy downpour, aggravated by the effect of the previous rains on the porosity of the soil, and the overflowing of a diversion channel then under construction by the United States government, caused the arroyo to have an unprecedented high-water mark at the point where it is crossed by Cherry Avenue.

The natural banks of the arroyo had a capacity of approximately 4,000 cubic feet per minute and at the time in question there was approximately 5,000 cubic feet of water flowing within the "banks" of the arroyo and in the depressed land adjacent to the channel. The highest previously recorded flow in this wash had been approximately 4,000 cubic feet per minute.

The Cherry Avenue crossing of the arroyo had been constructed in approximately 1926. At that time, two concrete "boxes" were placed in the channel of the arroyo and the road was built over the top of these structures. The total capacity of these two culverts was approximately 2500 cubic feet per minute.

Cherry Avenue, as it passed over the arroyo, swaled down, so that when the capacity of the two boxes was exceeded, water passed over the top of the highway. On the occasion in question, the Wondergem car was washed into the arroyo by this

1. See City of Tucson v. Koerber, 82 Ariz. 347, 313 P.2d 411 (1957); City of Tucson v. Apache Motors, 74 Ariz. 98, 245 P.2d 255 (1952); City of Tucson v. O'Rielly Motor Co., 64 Ariz. 240, 168 P. 2d 245 (1946).

flow, causing the death of the plaintiff's deceased. There was testimony from lay witnesses that the rain which occurred on the evening in question was the most intense rain they had witnessed over the course of years in the Tucson vicinity.

The pretrial order under which this case was tried limited the issues, insofar as theories of recovery are concerned, to those of nuisance and negligence. The pretrial order does not specify in what regard the plaintiff contended negligence, but an examination of the complaint[2] discloses the plaintiff's contentions in this regard were that the city had negligently constructed, maintained and controlled the public highway known as Cherry Avenue as it crossed this arroyo; that it had negligently failed to either close or barricade this roadway or provide adequate warnings to the public on the occasion in question; and that it had negligently failed to construct adequate drainageways and watercourses to divert the floodwaters from the said public street.

In settling instructions, the trial judge indicated he would give the following requested defendant's instruction:

"The court instructs you that regardless of whatever the rule may be as to the obstruction of a natural watercourse or whatever the rules are as to ordinary surface water or rainfalls, should you find that the flood causing the damage to the plaintiff was so unusual as to amount to an 'Act of God,' *then the City is not liable for any damage*, since there is no duty to provide for floods so unusual and extraordinary as to bring them within the category of an 'Act of God.'" (Emphasis added.)

The plaintiff properly objected to this instruction and, to ameliorate it, requested a lengthy instruction, which was given by the trial court, telling the jury, among other things, that the "Act of God" doctrine did not apply unless " * * * history of cli-matic conditions * * * in a particular locality afford no reasonable warning * * *" and unless the natural condition postulated to be an act of God was " * * * unforeseeable by reasonable men."

In granting a new trial, the trial court indicated its only reason for so doing was that the court had committed " * * * error in giving the jury instructions on Act of God * * *."

█ The instruction, giving the jury an obligation to deny all recovery if an "Act of God" caused the death of the deceased, applied to both nuisance and negligence theories of recovery. If the instruction was erroneous as to the negligence theory, as we have determined it was, "·· granting of a new trial was proper, regardless of whether the instruction might have been proper under the nuisance theory. 88 C.J.S. Trial § 388(1), at pp. 1032–1034; 53 Am. Jur. Trial § 581, at 458–59; cf. Coyner Crop Dusters v. Marsh, 91 Ariz. 371, 377, 372 P.2d 708 (1962). Hence, we do not find it necessary to determine whether an "act of God" instruction is proper in a nuisance case or whether any cause of action under this theory was shown in the evidence.

█ In defending the action of the trial court, the plaintiff relies almost exclusively upon the testimony of a witness who was the city engineer for the defendant at the time of the flood. This person testified he had cause to anticipate a flood of that magnitude prior to August 22, 1961, and that he was not surprised by the flood that occurred. While this testimony is undoubtedly most damaging to the city's position that this was an unprecedented flood, this testimony, from a former employee of the city, called by the plaintiff as a witness, is not binding or conclusive on the city. In determining whether particular instructions should be given, the evidence should be viewed favorably to supporting

2. See Balon v. Hotel Restaurant Supplies, Inc., 6 Ariz.App. 481, 433 P.2d 661 (1967), as to the propriety of going to the complaint when the pretrial order is unnecessarily broad in its delineation of factual issues.

the instruction, Reichardt v. Albert, 89 Ariz. 322, 361 P.2d 934 (1961); Trauscht v. Lamb, 77 Ariz. 276, 270 P.2d 1071 (1954); Casey v. Marshall, 64 Ariz. 232, 168 P.2d 240 (1946); Webb v. Hardin, 53 Ariz. 310, 89 P.2d 30 (1939); Gallagher v. Viking Supply Corp., 3 Ariz.App. 55, 411 P.2d 814 (1966); and, if there is any substantial evidence to support a pertinent legal doctrine, the giving of the instruction should be sustained. *Trauscht*, supra. Accordingly, we cannot affirm on the ground relied upon by the plaintiff, for we find sufficient evidence of an unprecedented flood to create a jury question, if "act of God" is a defense in a negligence case.

The city places its main reliance upon decisions such as Harper v. Johannesen, 84 Idaho 278, 371 P.2d 842 (1962), and Cover v. Platte Val. Public Power and Irr. Dist., 162 Neb. 146, 75 N.W.2d 661 (1956), which hold that under the particular facts of those cases, a jury question was presented as to whether injury was caused by an "act of God."

Each of these cases involves a flooding of real property adjacent to a natural watercourse by the placing of an obstruction in the stream or by an alteration of the natural watercourse. While the cases speak of "negligence," it is apparent from reading the decisions that the court is not talking of this concept in its normal usage, as something a reasonably prudent man might or might not do under similar circumstances, but rather of an absolute duty not to tamper with a natural watercourse. "Negligence" as viewed by the two decisions is something that can be ruled upon as a matter of law, if interference with a natural watercourse results in damage to adjacent land or persons or personalty on such adjacent land.

█ The decisions fall into the same category as the three decisions previously cited in note 1 hereof dealing with the liability of the City of Tucson in tampering with this particular natural watercourse. That this liability is one not within the area of the law of negligence but is one rather lying in the area of "strict liability" is recognized in Kennecott Copper Corp. v. McDowell, 100 Ariz. 276, 282, 413 P.2d 749, 753 (1966). In speaking of the liability of one who tampers with the natural flow of a watercourse to the damage of " * * * the land of his neighbor, * * * *" our Supreme Court has said:

> "An action for damages will lie upon these simple facts. Whatever one may do with surface waters, or with flood waters, as these terms are defined in Southern Pacific Co. v. Proebstel, 61 Ariz. 412, 150 P.2d 81, he may not cast the natural flow of a stream onto the land of his neighbor who is under no duty or obligation to receive the same. Negligence, wilfulness, or wantonness are utterly immaterial to the right to recover compensatory damages if plaintiffs' premises were not subject to an easement for the flow of the stream, and defendants did not divert the waters onto such premises as of right. The 'wilfulness' required for recovery here is simply that the maintenance of the means of diversion be wilful, that it be the willed act of defendants; it is immaterial that they did or did not will the later damage that resulted. At common law the proper writ in these circumstances is trespass on the case, see Reynolds v. Clerk, 8 Mod. 272, 88 Eng.Repr. 193; same case 1 Strange 634, 93 Eng.Repr. 747."

Schlecht v. Schiel, 76 Ariz. 214, 218, 262 P.2d 252, 254 (1953).

In agreement that such an action is not an action in negligence but in "trespass" is Kennedy v. Union Electric Co. of Missouri, 358 Mo. 504, 216 S.W.2d 756, 762 (1948). The origin of this absolute duty not to injure adjacent lands by interfering with a natural watercourse hearkens back to the common law of England and stems from the rights of riparian owners. 2 Farnham, Waters and Water Rights §§ 464, 474, 481 and 546 (1904); and 1 Kinney on Irrigation and Water Rights (2d ed. 1912) §§ 546 and 547.

In dealing with such a form of strict liability, it might be appropriate to instruct a jury as to an exception to this liability, which exception might be given the label "an act of God." [3] In City of Tucson v. O'Rielly Motor Co., 64 Ariz. 240, 244, 168 P.2d 245, 248 (1946), there is a quotation to support this thesis:

> "We think the rule stated in McQuillin, Municipal Corporations, 2d Ed., Vol. 6, Sec. 2877, is applicable in this case:

> " 'Where a municipal corporation constructs a culvert for the passage of the waters of a watercourse or natural drain, it will be liable for damage caused by the escape of water therefrom *to adjacent lands* due to a negligent construction of the culvert, or its inadequacy (according to the rule in many states) to carry away water ordinarily coming into it, or for failure of the municipality to remove obstructions therein; and a culvert obstructing a watercourse, *to the injury of riparian owners*, is a nuisance, and damages are recoverable.

> " 'The culvert must be sufficient to accommodate, not only the natural and normal flow of the stream, for example where the culvert is constructed over a natural watercourse, but such abnormal and excessive flow as may reasonably be anticipated in time of high water and flood. *However, "there is no duty to provide for floods so unusual and extraordinary as to bring them within the category of an 'act of God.' "* * * *' "
> (Emphasis added)

But we are not concerned with absolute liability in the instant case. There is no showing that the waters of the Arroyo Chico were diverted by the City of Tucson out of their natural channel to the damage of those on property outside the natural watercourse.

We know of no law which imposes an absolute duty upon a public body building a highway to construct adequate bridges over all of the natural drainage channels crossed by such highway. It is a common practice in this state to depress highways down into the innumerable arroyos that cross the highways of the state. To hold that a governmental body must always design its highways so there will be no natural flow of waters across the highway in time of flood would be an intolerable burden. Nor do we believe the public body constructing the highway should be subjected to strict liability if it takes the trouble to build a culvert under a highway to take care of most of the intermittent flows in the natural channel, but does not make such culvert adequate for the peak flows. We believe the test to be, as stated in City of Phoenix v. Weedon, 71 Ariz. 259, 263, 226 P.2d 157, 160 (1950):

> "(1) A municipality vested with power to improve and control its streets and sidewalks is liable for injuries sustained because of a failure to keep them *reasonably safe for travel*.

> "(2) *No hard and fast rule can be laid down* in such cases as to the character or extent of the defect in the street or sidewalk necessary to form the basis for actionable negligence, but each case must stand upon its own particular facts."
> (Emphasis added)

3. In discussing whether an "act of God" is a separate defense in a strict liability situation, a leading treatise states:
   "But where strict liability is in question, the strong current of authority, notwithstanding the Restatement of Torts to the contrary, relieves the defendant of liability in such a case. Thus in the leading case of Rylands v. Fletcher, where the reservoir broke through into the plaintiff's mine, it was suggested that the defendant might excuse himself by showing that the event was caused by an act of God— meaning, obviously, an unforeseeable intervening force of nature. In a later case, where the defendant's dam was carried away by an unprecedented cloudburst, the 'act of God' exception was applied, and the defendant was excused from liability."
   Prosser on Torts § 78, at 536–37 (3d ed. 1964).

■ If the condition of the street is such that reasonable men could arrive at different conclusions as to whether the highway was unreasonably dangerous, a jury question is presented, City of Phoenix v. Camfield, 97 Ariz. 316, 321, 400 P.2d 115 (1965), not liability as a matter of law.

■ If we are in the field of negligence and not strict liability in any of its forms, then we see no reason for an "act of God" instruction. The jury should be succinctly instructed, as it was in this case, that if the defendant was not negligent, or if its negligence was not a proximate cause of plaintiff's injury, there can be no recovery. Jury instructions are complicated enough without obfuscating them with an esoteric as to which there is disagreement as to a proper definition,[4] and even as to whether the enunciation of the doctrine in its normal English verbiage is too profane for courtroom use.[5]

In a negligence case, such as this, the "act of God" instruction is an "unavoidable accident" instruction in theologic guise. The relationship between these purported defenses has been noted in a law review article in these words:

"Some courts have distinguished between act of God and inevitable or unavoidable accident, while many others have treated the two phrases synonymously. Manifestly, there is a basic difference between the two phrases in that every act of God is an inevitable accident, but the converse is not true, i. e., an inevitable accident might be attributable to an act of man and not God."

18 Wash. & Lee L.Rev. 336, at 341 (1961).

Our own Supreme Court has equated the two "defenses" in a flood case:

"* * * or a very fair inference may have been drawn by the jury from the state of facts that the rainstorm on that date was an unusual fall of rain, such as amounts to an inevitable accident * *." Kroeger v. Twin Buttes R. R. Co., 14 Ariz. 269, 275, 127 P. 735, 738, Ann.Cas. 1914A 1289 (1912).

The discussion in City of Phoenix v. Camfield, supra, pertaining to a jury instruction on inevitable accident has equal application, in our opinion, to an "act of God" instruction in a negligence case such as this:

"If the jury is properly instructed on the necessity of negligence on the part of the defendant and the request [sic] that this negligence be the proximate cause of the injury that is sufficient. The defense of unavoidable accident is actually a defense of non negligence and

---

4. LeFebvre v. Callaghan, 33 Ariz. 197, 202, 263 P. 589, 591, (1928), gives two definitions used by various courts:
   "The one definition is:
   " 'An act of nature which implies entire exclusion of human agency.'
   "The other is:
   " 'That kind of force of the elements which human ability could not have foreseen or prevented, such as lightning, tornado, sudden squall or wind, and the like.' "
   In LeFebvre, our Supreme Court indicated the latter of the two definitions to be the concept intended by a statutory reference to "acts of God."
   City of Tucson v. Dunseath, 15 Ariz. 355, 139 P. 177 (1914), appears, by indirection, to have adopted the former of these two definitions in a flood case. In commenting upon objections to instructions given by the lower court, which had used a conglomeration of foreseeability,

unusualness and sole causation as the test of what is an "Act of God," our Supreme Court said:
   "Admitting the point made [the charge of inconsistency in the instructions], yet we think, when the whole language on that question is construed and analyzed, the thought conveyed to the jury was that, if the storm would have caused the injury independent of the obstruction placed in Third [A]venue, the verdict should be for appellant."
   15 Ariz. at 365, 139 P. at 181.
   Thus reasoning, the court in Dunseath affirmed the giving of the confusing definition used by the trial court.

5. The Supreme Court of Pennsylvania (Justice Musmanno interpreting) in Bowman v. Columbia Telephone Co., 406 Pa. 455, 179 A.2d 197, 201 (1962), suggests the words "vis major" be used, so as to avoid " * * * the loose use of the name of the Diety * * *."

an instruction on unavoidable accident is, in fact, confusing. It improperly implies that 'unavoidable accident' is a separate and distinct defense from 'non negligence.'"

97 Ariz. at 323, 400 P.2d at 120.

This does not mean, of course, that the defendant in a negligence case is not entitled to an instruction on foreseeability. Conduct is simply not negligent unless it has created an *unreasonable* and *foreseeable* risk of injury. The following statement from the Restatement (Second) of Torts is pertinent:

"The actor is not required to anticipate or provide against conditions of nature or the operation of natural forces which are of so unusual a character that the burden of providing for them would be out of all proportion to the chance of their existence or operation and the risk of harm to others involved in their possible existence or operation. It is therefore not necessary that a particular operation of the natural force be unprecedented. The likelihood of its recurrence may be so slight that in the aggregate the burden of constantly providing against it would be out of all proportion great as compared with the magnitude of the risk involved in the possibility of its recurrence."

Restatement (Second) of Torts § 302, Comment g, at 84.

This doctrine of foreseeability is an integral part of the law of negligence in this state. Tucker v. Collar, 79 Ariz. 141, 146, 285 P.2d 178 (1955); and Tucson Rapid Transit Co. v. Tocci, 3 Ariz.App. 330, 334, 414 P.2d 179 (1966). Leading treatises on the law of torts indicate that foreseeability is deeply embedded in the negligence law of this country. See Prosser on Torts § 51, at 320–21 (3d ed. 1964); and Harper and James, The Law of Torts, § 20.5, at 1134–51 (1956).

The major vice of the "act of God" instruction given in this case is not that it changed the requirement of a foreseeable and unreasonable risk but rather that it un-

necessarily confused the issues before the jury. The net effect of the instruction was to give to the jury the impression there was a separate defense, denominated "act of God," which would insulate the defendant from liability even though the defendant was guilty of negligence which was a proximate cause of this accident. In law there is no such separate defense. If treatises, such as those of Prosser and of Harper and James, can be written on the subject of negligence without any indication, cover to cover, that an "act of God" is some kind of separate defense in a negligence case, then we believe a negligence case can be tried to a jury in this state without belaboring the jury with this concept.

Affirmed.

HATHAWAY, C. J., and JOHN A. McGUIRE, Superior Court Judge, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge JOHN A. McGUIRE was called to sit in his stead and participate in the determination of this decision.