453 P.2d 983

Francis ARNOLD and Thelma J. Arnold, husband and wife, Appellants,

v.

FRIGID FOOD EXPRESS CO., Joseph Paul Kovrig, and Thomas J. Lewandowski, as Administrator of the Estate of Paul Stanley Lewandowski, Deceased, Appellees.

No. 2 CA-CIV 557.

Court of Appeals of Arizona.

April 30, 1969.

As Amended on Denial of Rehearing May 29, 1969.

Review Denied June 24, 1969.

Dykes, Selden, Bayham & Fike by Alan Philip Bayham, Phoenix, for appellants.

Gust, Rosenfeld & Divelbess by James F. Henderson, Phoenix, for appellees, Frigid Food Express Co., and Joseph Paul Kovrig.

Moore, Romley, Kaplan, Robbins & Green, by Robert H. Green, Phoenix, for appellee Thomas J. Lewandowski.

HATHAWAY, Judge.

Thirteen vehicles collided in a severe dust storm near Picacho, Arizona, on the afternoon of July 12, 1964. Nine persons were killed in the disaster, several cars burned, and multiple injuries were inflicted. This appeal involves a lawsuit which was brought by one of the persons injured, Francis Arnold, to recover for the loss of his left leg.

It was a Sunday afternoon and the Francis Arnold family was returning to their home in Coolidge, Arizona, from an outing which had taken them southeast of Tucson. They were proceeding north on the Tucson-Phoenix Freeway; their teenage daughter, Judy, was driving. Mrs. Arnold was riding in the front seat, Mr. Arnold on the right rear side, and another daughter, Connie, behind the driver.

It was windy when they left Tucson and there were occasional gusts of dust blowing across the freeway. Judy slowed to

about 45 miles per hour. Later, about a mile north of the Red Rock overpass, the storm suddenly became very severe. Mr. Arnold testified, "* * * I could look up in the air and it looked like * * * a waterfall of just pure dirt * * *." He told Judy to pull off the road and stop. The freeway had a paved emergency lane ten feet wide on the right side. Judy stopped the car partially on the emergency lane, with the passenger side off the pavement.

The dust cloud broadened or shifted at this point and the Arnold car was engulfed. Visibility was reduced to zero, except for brief glimpses between gusts. Within seconds, a car driven by Johnny Avechuco pulled up alongside and parked in the emergency lane. Almost immediately, a green pickup truck, driven by Jesus Adame, struck the Avechuco car from the rear, driving it ahead, with the pickup taking the Avechuco car's place alongside the Arnold car. Mr. Arnold saw, by means of lights behind the pickup, the silhouettes of three persons, one a child, in the pickup. He got out, from the rear on the passenger side, and walked around the front of his car to see if anyone had been hurt.

As Arnold started to talk to Adame, several other vehicles came into the heavy dust. A white car, apparently that of Juan and Theresa Arzate, came up behind Adame's pickup. Defendant Lewandowski's car then collided with Arnold's and one or more other cars, coming to rest in the low-speed lane. Another white car, following Lewandowski and in front of the defendant Kovrig, was involved in one or more collisions, but apparently struck only the Lewandowski vehicle on the right side of the roadway. Kovrig's tractor-trailer truck then struck Lewandowski's car broadside, pushing it along for 100 feet or more before coming to rest. As a result of these collisions, the Avechuco, Adame, Arzate, and Arnold vehicles were knocked off the emergency lane and into the barrow pit.

At some point during these collisions, Arnold's left leg was apparently struck by a vehicle, or caught between two vehicles, and was virtually amputated below the knee. An attempt to save the leg failed and it was eventually amputated by surgery. The Arnolds brought suit against Frigid Food Express Company, the owner of the truck Kovrig was driving, as well as against Kovrig and Lewandowski's estate (Lewandowski having died at the scene). The owner of another tractor-trailer and its driver are named in the complaint but are not in the suit at this point.

Plaintiffs prayed for approximately $250,000 for property damages, medical expenses, loss of earnings, personal injuries, and punitive damages. The trial court directed a verdict for the defendants on the issue of punitive damages and the jury returned verdicts for the defendants on the issue of negligence. Plaintiffs appeal, asking for a new trial.

Questions for review involve three allegations of error, (1) the giving of an instruction on an "act of God," (2) the direction of a verdict for the defendants as to punitive damages, and (3) exclusion of certain evidence. Only the "act of God" instruction is seriously contended to be reversible error.

We have held that an "act of God" instruction is improper in a negligence case. City of Tucson v. Wondergem, 6 Ariz.App. 570, 435 P.2d 77 (1967). Where an instruction is given on "unavoidable accident" in a negligence case, it is reversible error where prejudice is shown. Esquivel v. Nancarrow, 104 Ariz. 209, 450 P.2d 399 (1969); Trickel v. Rainbo Baking Company of Phoenix, 100 Ariz. 222, 412 P.2d 852 (1966); City of Phoenix v. Camfield, 97 Ariz. 316, 400 P.2d 115 (1965). We are of the opinion that the same test applies here. As our Supreme Court said in *Camfield*, such instructions are prejudicial unless it appears that "the evidence showed the accident happened without negligence." 97 Ariz. at 323, 400 P.2d 115 at 120. See, McKeever v. Phoenix Jewish Community Center, 92 Ariz. 121, 374 P.2d 875, 1 A.L.R.3d 957 (1962); Beliak v.

Plants, 84 Ariz. 211, 326 P.2d 36 (1958). As will be seen, we do not believe that this case falls within that exception. We have consequently decided that the judgment for the defendants must be reversed and a new trial granted. Defendants' efforts to distinguish the instruction given here, on the basis of a requirement that the jury find the "act of God" to be the sole proximate cause of the accident, are not persuasive. We consider the remaining allegations of error for purposes of the new trial.

The plaintiffs next contend that the trial court erred in directing a verdict for the defendant Kovrig (and Frigid Food Express) on the issue of the punitive damages, there being evidence upon which a judgment for punitive damages could be sustained. We agree.

The evidence shows that Kovrig was driving his 72,000-pound, fully-loaded tractor-trailer rig as fast as it would go under the circumstances. Kovrig testified that, because of a gradual incline in the highway and the high wind, his rig was traveling at approximately 35 miles per hour even though he had the accelerator pressed to the floor. The testimony of other witnesses, however, indicates that Kovrig was going much faster. Mrs. Avechuco estimated Kovrig's speed at 45–50 miles per hour when it came by their car, after it had collided with Lewandowski's car. The Lewandowski car had been pushed along in front of Kovrig's truck for perhaps 100 feet or more by the time it reached the Avechuco car.

Visibility had been poor, and there were gusts of dust blowing across the freeway for some time prior to the accident. Virtually all of the cars involved were running with lights on for some distance prior to the accident. Patrolman Bobby Eldridge, an investigating officer, testified that, as he approached the scene, "Sometimes at five and ten miles an hour I felt I was going way too fast." Kovrig agreed at trial that one who drives a heavy vehicle must exercise greater care than the driver of a smaller, ordinary vehicle. See Baltimore Transit Company v. Prinz, 215 Md. 398, 137 A.2d 700 (1958). We must then decide whether this evidence is sufficient to warrant submitting the question of punitive damages to the jury.

Our Supreme Court stated in Nichols v. Baker, 101 Ariz. 151, 153, 416 P.2d 584, 586 (1966), and reiterated in Evans v. Pickett, 102 Ariz. 393, 396, 430 P.2d 413 (1967):

"A person is wantonly negligent if he wilfully does an act or fails to do an act which it is his duty to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the plaintiff but also involves a high degree of probability that substantial harm will result. * * *"

■ The cases in our own jurisdiction and in others indicate that punitive damages may be allowed in automobile accident cases where negligent conduct beyond the range of ordinary negligence has been shown. *Cf.* Nichols v. Baker, 101 Ariz. 151, 416 P.2d 584 (1966) (driving heavy truck with knowledge of faulty brakes and failure to have them repaired); Newman v. Piazza, supra (stopping car on busy street during altercation with third party, causing plaintiff's car to collide from rear); Southern Pacific Company v. Barnes, 3 Ariz.App. 483, 415 P.2d 579 (1966) (driving train at speeds up to 80 m.p.h. on little-used spur line, across busy street, at night, without appropriate care); Hicks v. McCandlish, 221 S.C. 410, 70 S.E.2d 629 (1952) (mistaking plaintiff's taillights for the lights of a store in the vicinity and colliding with rear of plaintiff's car); Chapman v. Associated Transport, Inc., 218 S.C. 554, 63 S.E.2d 465 (1951) (following too closely and speeding, thereby running large tractor-trailer into plaintiff's car when plaintiff slowed); Dame v. Estes, 233 Miss. 315, 101 So.2d 644 (1958) (exceeding speed limit, failing to see stop sign, and colliding with vehicle in intersection); see also Annot., 62 A.L.R.2d 813, §§ 2–6. We

therefore hold that it was error to take the issue of punitive damages from the jury.

■ Error is also alleged in the exclusion of a drawing illustrating a witness' recollection of a scene during the accident. Objections as to foundation were properly sustained after the witness himself cast doubt upon the accuracy of the artist's rendition. The admission of exhibits lies to a certain extent within the sound discretion of the trial court and we see no abuse here. See Throop v. F. E. Young and Company, 94 Ariz. 146, 382 P.2d 560 (1963).

■ Even though we have found reversible error, defendants contend that the plaintiffs are not entitled to a new trial because they failed to prove negligent conduct and proximate causation on the part of either of these defendant drivers. Our Supreme Court has held that error does not require reversal where the record shows that a directed verdict should have been granted. In re Schade's Estate, 87 Ariz. 341, 351 P.2d 173 (1960). We have therefore looked to the record to determine whether sufficient evidence was presented at trial to warrant submission of the case to the jury.

We have already concluded that the jury could have found Kovrig to be negligent. We also believe that Lewandowski could be found to have been negligent. There is evidence that Lewandowski's car struck the rear of the plaintiffs' car while it was parked some six to seven feet off to the side of the low-speed lane. There is also testimony that he may have been driving too fast under the circumstances.

■ The rule of Dennis v. Stukey, 37 Ariz. 299, 294 P. 276 (1930); Coe v. Hough, 42 Ariz. 293, 25 P.2d 547 (1933); and Campbell v. English, 56 Ariz. 549, 110 P.2d 219 (1941), that it is negligence as a matter of law to drive at such a speed as to be unable to stop within the range of one's vision, has been modified to apply only where an ordinary prudent driver, under like circumstances, would have been able to see and avoid an object in the roadway. Alabam Freight Lines v. Phoenix Bakery, Inc., 64 Ariz. 101, 166 P.2d 816 (1946); Butane Corp. v. Kirby, 66 Ariz. 272, 187 P.2d 325 (1947); LeRoy v. Phillips, 97 Ariz. 263, 399 P.2d 669 (1965). Whether an ordinary prudent driver would have foreseen the danger of driving into the dust bank is a question for the jury.

Finding sufficient evidence of negligence as to both defendants, we examine the record to ascertain whether there is evidence which would show that there was a causal connection between the negligence of either defendant and plaintiff's injuries. As to this, the testimony of Arnold himself takes on importance.

As Arnold talked with Adame, the lights from behind the pickup were "brightening up from back behind." He thought the lights had been static from the time he got out of the car until he began to talk with Adame, and testified that he recalled seeing a white car parked behind the pickup. As the light brightened:

"* * * I felt the trembling of the ground and I heard a lot of racket and I realized that I was between my car and this pickup, and I knew that this was on me. * * * and as this rumbling roar and loud noise came about, I realized that I had only one chance, and I had pressed my hand on the right front fender of this pickup * * * I pressed this hand on to the hood and I jumped on top of the hood. My intention was to make it, and I thought I made it because I thought I had my timing just right. * * *"

Arnold found no safety there. The next thing he remembered was lying in the dirt beside the paved shoulder of the road with his left leg nearly severed.

The white car that Arnold saw behind the pickup was probably that of Theresa Arzate. Mrs. Arzate testified that she stopped her car behind a green thing for an instant before her car was struck twice from the rear. The only green vehicle which it could have been is the pickup.

From this point on, the evidence is highly conflicting and understandably so in view of the confusion and excitement which reigned at the scene. The veil of dust seems to have even invaded the courtroom and to have seeped into the record. We have attempted to pierce this screen and to view the record in the light most favorable to the plaintiffs. In so doing, we can only hope that the cloud has not infiltrated this opinion.

Though it is impossible to reconcile the testimony of the eyewitnesses as to the sequence of events, certain physical facts stand out. Perhaps the most important physical fact is that Kovrig's 72,000-pound rig was the only vehicle of that size that came into the accident scene in the low-speed lane, closest to where the Arnold, Arzate, Adame and Avechuco vehicles were parked. When the truck came to rest, 100 feet or more up the road from where the Arnold car had been parked, the exhibits show the Lewandowski car, charred, mangled and "melted down" under the right front of the truck. Part of it projected to the right of the truck, suggesting that it projected into the emergency lane as it was pushed along. Gouge marks in the pavement, apparently caused by the Lewandowski car, commenced in the area where the Arnold and other vehicles had been parked. We have the further "stand-out" fact, testified to by all witnesses, that some time after the Arnold, Arzate, Adame and Avechuco cars first came to rest on the right side of the roadway, some tremendous force caused these vehicles to be scattered and propelled generally down the road in the direction that Kovrig's rig, with Lewandowski's car in front, was going. Although no one saw the truck hit any of the cars, the Avechucos and Judy each testified that they thought it would when they saw it before fleeing the scene. Finally, the last thing Arnold, a diesel mechanic, remembers is what he thought was the sound of a diesel truck coming. Taking these selected portions of the record, and rejecting inconsistent testimony, we have a credible version which the fact-finder might accept which would hold that the operation of the Kovrig semi and the Lewandowski vehicle, together caused plaintiff's injuries.

We believe a different view of the evidence might find causation only as to the Lewandowski car. This vehicle, a black Mercury, was the only black car at the scene. Since black paint was found on the left rear fender of the Arnold vehicle, a jury could conclude that Lewandowski collided with the Arnold vehicle. Mrs. Arnold testified that the Arnold car was struck slightly at the time the pickup was shoved into the Avechuco car, the time at which both she and Judy testified that Arnold lost his leg. A jury could conclude that Lewandowski struck the Arnold and Arzate cars simultaneously, knocking the Arzate car into the pickup and the pickup into Avechuco's car, severing the leg.

■ We find no conclusive evidence as to when Arnold lost his left leg. Mrs. Avechuco testified that she saw Arnold jumping on his left leg, after the time when Judy and Mrs. Arnold believe the injury occurred, and immediately before Kovrig crashed into the scene. Mr. Arnold also received minor injuries to his right leg on this occasion which might explain Mrs. Avechuco's testimony. We conclude that the jury could reasonable find either Lewandowski or Kovrig, or both, responsible. The selection between the various inconsistencies in the eyewitness accounts and the possible inferences from the physical facts is properly a jury function. Davidson v. Wee, 93 Ariz. 191, 379 P.2d 744 (1963); Worthington v. Funk, 7 Ariz.App. 595, 442 P.2d 153 (1968)

For the foregoing reasons the judgment is reversed and the cause is remanded for a new trial.

MOLLOY, C. J., and KRUCKER, J., concur.