**William R. COX, Donna Paxton, Cathleen Paxton Riley, and Sandra Venta, Appellants (Plaintiffs below),**

v.

**Raymond John VERNIEUW and Weber Western General Dairies, Inc., Appellees (Defendants below).**

**No. 5082.**

Supreme Court of Wyoming.

Jan. 8, 1980.

■

Robert J. Pickett and Harley J. McKinney of Pickett, McKinney & Smith, Rock Springs, for appellants.

Ford T. Bussart and John D. Rossetti of Greenhalgh, Bussart, West & Rossetti, Rock Springs, for appellees.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

THOMAS, Justice.

The only issue meriting discussion in this case is whether the defense premised upon an Act of God is proper in a case in which recovery is sought on a negligence theory. In this instance the asserted Act of God was a physical defect of the driver of a motor vehicle. The trial court did instruct the jury on the Act of God defense in the case of the appellant Cox, and in the non-jury trial in the other appellants' cases the court found that the accident was a result of an Act of God. We shall hold that the defense of an Act of God became the law of the case as to Cox because no objection was made to the instruction. With respect to the other appellants we shall hold that a physical defect is not within the definition of an Act of God, and we shall expand the issue to encompass a rule that the defense of an Act of God should not be considered in any case in which recovery is sought upon a theory of negligence. In such a case the defense of an Act of God is superfluous. We will affirm the judgments for the defendants.

The appellee Vernieuw was employed by the appellee Weber Western General Dairies, Inc., as a truck driver. On May 4, 1976, Vernieuw made his customary run from Ogden, Utah, to Rock Springs, Wyoming, driving a truck tractor pulling a semi-trailer. He delivered a load of packaged milk to the Cream of Weber Dairy in Rock Springs. He unloaded part of the milk in his trailer, and then helped another driver, who came from Riverton, to unload milk from his truck. After this was accomplished they switched trailers so that Vernieuw could take the empty trailer from Riverton back to Ogden. The Riverton driver took the partially empty trailer to Rawlins, where the rest of the load was dropped, and he then returned to Riverton.

The circumstances surrounding the injuries to the appellants are colorful to the point of being bizarre. Vernieuw pulled away from the Cream of Weber dock with the empty trailer, and traveled in an easterly direction toward Center Street in Rock Springs. He entered Center Street without stopping, and collided with a vehicle driven

in a southerly direction by the appellant Sandra Venta. These vehicles became entangled, and the Venta vehicle was carried on the front of Vernieuw's tractor until it ultimately collided with the wall of the Montgomery Ward building, which it penetrated. Vernieuw's truck carried the Venta vehicle clear across Center Street where he drove up on the curb in front of the Safeway store, and then made generally a right turn back across Center Street before striking the Montgomery Ward store. During the course of this short journey Vernieuw's truck struck another vehicle, which was owned and driven by the appellant Riley, and in which the appellant Paxton was a passenger, causing damage to that vehicle and injuries to the occupants. The truck also collided with and damaged two other vehicles. When the truck crashed through the side of the store it pinned the appellant Cox against some stereo sets in the appliance department of the store.

Vernieuw testified that he lost consciousness about 40 feet before he entered Center Street, and that he did not regain consciousness until after his vehicle had come to a stop within the Montgomery Ward store. The record discloses no reason to discount Vernieuw's testimony in this regard. The testimony of Vernieuw's treating physicians was that this loss of consciousness was attributable to a lack of oxygen in his brain because of an intermittent heart block.

The history of the cause of Vernieuw's loss of consciousness is fascinating. In August of 1972 Vernieuw suffered an episode which a physician described as a grand mal seizure. The history of that episode as it was given to the physician fit that diagnosis and Vernieuw also was observed in the throes of a second such seizure while in the emergency room of the hospital. The physician said that definitely was a full-blown grand mal seizure. Further investigation was done by both a neurosurgeon and a cardiologist. The cardiologist at that time noted a prolongation of a conduction of electrical impulses through the heart, but it was described as being very minimal. One physician testified that usually this has no effect on the heart. Vernieuw's condition was diagnosed as being neurological in nature, and he was placed upon a common prescription for the treatment of such conditions.

At that time the physician instructed Vernieuw not to drive, and he was transferred to a different job by Western General Dairies which did not encompass driving vehicles as part of his duties. Vernieuw had no further dramatic episodes until the accident. There was an indication by one physician that in some intervening examinations Vernieuw reported "funny episodes" or dizziness as having occurred. None of these involved loss of consciousness. He did work at his job on a daily basis, and his supervisor testified that he had no problems of a similar nature on the job. Subsequently a driving position became available, and because of Vernieuw's desire to return to duty as a truck driver he was sent to a physician by Western General Dairies to be examined pursuant to Interstate Commerce Commission regulations. This physician was the doctor to whom employees of Western General Dairies normally were referred by the company, and the manager of the operations in Ogden called the doctor and instructed him to give Vernieuw a very careful examination because of the episode in 1972 which the manager described as a blackout problem. After this examination Vernieuw was cleared to drive by the doctor, and he resumed his truck driving duties in 1975. Subsequently he was assigned to the Rock Springs run.

After the accident additional medical evaluations were made of Vernieuw. These resulted in an ultimate diagnosis by a cardiologist that Vernieuw suffered from intermittent heart failure. When such a condition is present electrical impulses normally functioning in the heart do not travel in a normal time frame, and the heart beat slows down or stops temporarily thus depriving the brain of oxygen. The cardiologist testified that he was able to diagnose this condition based upon a special electrocardiogram made inside the heart which is called a "His bundle recording." This procedure is accomplished through a heart

catheterization, and it measures the time for electrical activity to travel through the lower portions of the heart. The cardiologist testified that the tests by which he made his diagnosis were quite sophisticated and were not available in the State of Utah in 1972. The treatment of Vernieuw's condition then was to install a pacemaker for the purpose of correcting the slow transmission of the electrical impulses and thereby avoid blackout spells.

The record still leaves the situation inconclusive because Vernieuw did suffer a seizure while in the hospital following the installation of the pacemaker. One physician attributed that to the fact that he was taken off the medication for the neurological problem after the installation of the pacemaker, and this resulted in a seizure which dislodged the pacemaker. Another doctor felt that the pacemaker had malfunctioned, and the failure of the pacemaker caused the seizure. The doctors were in accord, however, that on the basis of the medical information available at the time of the seizure in 1972 and the follow-up diagnosis and treatment there was no reason based upon existing or potential cardiac disease to advise Vernieuw not to drive a motor vehicle or to limit his activities in any way. The cardiologist who made the diagnosis of intermittent heart failure, after reviewing the medical records relating to Vernieuw, testified that he would not have instructed Vernieuw not to drive in 1972 because of any cardiac problem.

The appellants pursued their causes against Vernieuw and his employer upon the theory that it was negligent conduct to permit Vernieuw to drive the motor vehicle given his medical history of a prior blackout, which they contended should have been cause to anticipate a reoccurrence. Vernieuw and his employer took the stance that Vernieuw's blackout at the time of the accident was from a medical problem which they had no reason to anticipate. They urged that the situation was encompassed by the Act of God rule, and at the trial the district court did give instructions espousing that theory in the following form:

"INSTRUCTION NO. 3

"Defendants have denied any negligence or liability and have alleged that if Plaintiff was injured and sustained any damages, such injury and damages were due to a series of events or circumstances not within the control of either Defendant. Defendants must prove, by a preponderance of the evidence, that any injuries and damages sustained by Plaintiff resulted from an act of God, which was the sole, direct cause of the accident.

\*     \*     \*     \*     \*     \*

"INSTRUCTION NO. 7

"The law recognizes that some accidents are caused by what is termed an act of God. An injury to person or property caused directly and exclusively by natural causes, without human intervention, and which could not have been prevented by the exercise of reasonable care and foresight, is the result of an act of God. "However, in order for the rule to apply, the act of God must be the sole cause of the accident. There can be no combination of an act of God and the fault of man, *as the presence of one excludes the other.* The Defendants, in relying on the defense of act of God, must prove, by a preponderance of the evidence, the following:
"1. That the act of God occurred; and
"2. That the act of God was the sole, direct cause of the accident." [Emphasis added.]

The appellants Paxton, Riley and Venta waived a jury trial. While the evidence was received in a consolidated proceeding, the quoted instructions affected only the case of the appellant Cox. The district court did, however, accept this theory of the defendants. In the findings of fact and conclusions of law in each of the other cases the court found as follows:
"1. That the accident which occurred herein was the sole direct result of an Act of God.
"2. That the Defendants named herein were not negligent."

In the Cox case the jury returned a verdict which encompassed a special finding by the jury in the following form:

### "VERDICT

"WE, the Jury, duly empaneled and sworn to try the above-entitled case, do find as follows:

"Q. #1. Do you find the accident was the sole, direct result of an act of God? (Answer by checking the appropriate line.)

|  | YES | NO |
|---|---|---|
| "A. | X | — |

If your answer is 'yes', proceed no further, sign the Verdict, and return to Court. * * * "

By following this latter instruction the jury made no specific finding with respect to the negligence of the defendants. The appellants then moved for judgment notwithstanding the verdict or in the alternative for a new trial in each case. In their brief they state the issue to be, "Whether a Judgment Notwithstanding the Verdict should have been entered on the grounds and for the reason that the finding by the jury is contrary to the law as set forth in Instruction No. 7 to the jury (Record page 112), and contrary to the testimony and evidence presented at trial." The appellees responded by stating the issue to be, "Whether there is evidence to support the finding of the jury regarding Instruction Number 7."

■ Meeting the issue as framed by the parties, it is clear that the evidence is sufficient to sustain the jury verdict in the Cox case and the findings of the trial court in the other cases. We are required to view the evidence in the light most favorable to the appellees. The essence of the question posed is whether the record contains evidence which is so overwhelming with respect to negligence on the part of the appellees that we are required to conclude as a matter of law that the jury ignored the court's instructions. We recently have said that the test of negligence is what a reasonably prudent person would foresee and would then do under the circumstances in the light of his anticipation of the foreseen

events. *Endresen v. Allen*, Wyo., 574 P.2d 1219 (1978). The medical testimony in this case is sufficient to support the conclusion that neither Vernieuw nor his employer had any reason to anticipate the blackout caused by intermittent heart failure. If they had no reason to anticipate the causal event then neither of them is chargeable with negligence for failing to avoid it. If then it is the law of this case that the Act of God defense was properly presented to the jury and applied by the trial court, we are satisfied that the evidence is sufficient to sustain the jury's verdict and the trial court's finding.

■ In arguing the case the parties debated whether the Act of God defense should have been instructed upon, although the appellees suggested that the argument was foreclosed because of the failure of the appellant Cox to object to the instruction. We recognize and apply our usual rule with respect to the necessity of objecting to instructions, in accordance with Rule 51, W.R. C.P., and our holdings that an instruction given without objection becomes the law of the case. *Pure Gas and Chemical Company v. Cook*, Wyo., 526 P.2d 986 (1974); *Joly v. Safeway Stores, Inc.*, Wyo., 502 P.2d 362 (1972). Cox did fail to object to the instructions presenting the Act of God theory to the jury, and consequently that theory became the law of this case so far as Cox is concerned. Even though we have a plain-error doctrine, *Madrid v. State*, Wyo., 592 P.2d 709 (1979), we have held that a party who seeks to rely upon plain error must demonstrate a clear and unequivocal rule of law which is transgressed in a clear and obvious, not merely arguable way, and some substantial right of that party must have been affected. *Hampton v. State*, Wyo., 558 P.2d 504 (1977). It becomes clear from the discussion of the cases of the other appellants that Cox could not have been prejudiced by these instructions.

As we signalled earlier in this opinion, however, the question of primary concern is whether the defense of an Act of God should be the law of this case or of any case premised upon a theory of negligence. In

the course of the argument of a Motion for Directed Verdict on the issue of liability, made by the appellants at the close of the evidence, the district court was apprised of their position that the Act of God defense should not be applied in this case. It was applied by the district judge, however, in his Findings of Fact and Conclusions of Law, and the appellants other than Cox, having waived a jury trial, are not foreclosed from presenting this question.

In *King v. Richards-Cunningham Co.*, 46 Wyo. 355, 28 P.2d 492, 494 (1934), the court discussed inevitable or unavoidable accident in a case arising out of a lease. The conclusion the court drew was that "inevitable accident" was the same concept as "unavoidable casualty," and that both terms described an occurrence which " 'could not be avoided by that degree of prudence, foresight, care, and caution which the law requires of every one under the circumstances of the particular case.' [quoting *Weeks v. Transit Co.* [C.C.A.] 61 F. 120.]." It is apparent that the quoted language describes an absence of negligence. The court then went on to compare "Act of God" with "inevitable accident." An Act of God was described as an occurrence which has arisen from solely natural causes such as the wind and storms to be distinguished from an inevitable accident which has its origin in whole or in part in the agency of man. Although all Acts of God are inevitable accidents, it would not follow that all inevitable accidents are Acts of God.

In *Sky Aviation Corporation v. Colt*, Wyo., 475 P.2d 301, 304 (1970), we reaffirmed this distinction, and in that case defined Act of God as any accident "due directly and exclusively to natural causes without human intervention and which could not have been prevented." The distinction from unavoidable accident was reaffirmed by limiting an Act of God to a natural event, such as wind and storms. The court also noted that there can be no combination of an Act of God and the fault of man, and that for the rule to be applicable the Act of God must be the sole cause of the injury. The instruction given in this case substantially follows the language of the court in *Sky Aviation Corporation v. Colt*, supra, but without incorporating the limitation to a natural event.

We agree with the argument that because of the limited description of what properly constitutes an Act of God in our prior cases, such a concept would not encompass physical afflictions or medical problems of a defendant. Further, the doctrine is not appropriate in a case founded upon a negligence theory, and for that reason the defense of an Act of God clearly should not have been applied here. Our conclusion is grounded upon the requirement encompassed in the instruction which became the law of the case as to the appellant Cox that the Act of God be the sole cause of injury and that there can be no combination of an Act of God and the fault of man. The effect of this language is, when read in connection with the other instructions, that in order to find an Act of God there first must be a finding of no fault, i. e., no negligence.

We said that we would expand the issue to the end that we would hold that the Act of God defense should not be applied in a case brought upon a theory of negligence. As our foregoing analysis demonstrates, an Act of God is no more than another way of saying that the defendants were not negligent. While this defense unquestionably has rhetorical glamour, particularly for purposes of arguing a case to the jury, it is our conclusion that better jurisprudence would foreclose the application of the theory in a negligence case. If the defendant must be found non-negligent in order to apply the Act of God defense, and this is the way we have expressed the rule, then the case really ends with the finding of no negligence and any finding with respect to an Act of God is superfluous. We agree with the view taken by the Arizona Court of Appeals in *City of Tucson v. Wondergem*, 6 Ariz. App. 570, 435 P.2d 77, 82 (1967), when the court said, "Jury instructions are complicated enough without obfuscating them with an esoteric as to which there is disagreement as to a proper definition." This rul-

ing that an Act of God is improper in a negligence case was reaffirmed in *Arnold v. Frigid Food Express Co.*, 9 Ariz.App. 472, 453 P.2d 983 (1969).

The judgments as to all appellants are affirmed.